66618. COWEN et al. v. SNELLGROVE et al.

CARLEY, Judge.

This case arises from a dispute between the Mitchell County School District ("Mitchell County"), appellant, and the City of

Pelham School District ("Pelham"), appellee, concerning the distribution of certain funds allocated for educational purposes under the Tax Rebate Act, OCGA § 20-2-330 et seq. (Code Ann. § 32-858 et seq.) ("tax rebate funds"). The stated purpose of the Tax Rebate Act is "to provide relief to local school taxpayers from the unfair burden of school taxes." OCGA § 20-2-330 (Code Ann. § 32-858). The tax rebate funds are allocated on a pro rata basis according to the average daily attendance of the particular school systems. However, a 1980 amendment to the Act provides that "in those instances where pupils residing in one district attend schools located within the limits of another district, the portion of the grant representing such pupils which otherwise would have been received by the district within the limits of which the pupils are in attendance shall be allotted to the district in which the pupils reside." OCGA § 20-2-333 (Code Ann. § 32-860).

Pursuant to the above-cited provisions, the State Board of Education made annual disbursements to Mitchell County and to Pelham. Pelham, contending that certain of the tax rebate funds which should be allotted to it had been and would again be allotted to Mitchell County, filed suit against Mitchell County, the State Board of Education, and the State Superintendent of Schools.

Appellee Pelham's claim to the contested tax rebate funds was based on a 1952 contract entered into between it and appellant Mitchell County, pursuant to which Pelham agreed to educate all school children residing in certain designated areas of Mitchell County outside the city limits of Pelham. The disputed portion of the contract provided: "Subject to approval of the State Board of Education, the party of the second part [Pelham] shall receive from the State Board of Education all funds which would ordinarily go to the Mitchell County Board of Education for those pupils from Mitchell County attending the Pelham Public Schools, with the exception of funds provided for transportation of pupils which shall continue to be paid to the Mitchell County Board of Education." The State Board of Education, which had expressly approved the contract when it was made in 1952, had disbursed funds other than those at issue here in accordance with the contract at all times since then.

The trial court awarded the disputed tax rebate funds to Pelham pursuant to the contract. Mitchell County appeals.

1. Initially, we note that jurisdiction over this matter lies with this Court, rather than with the Supreme Court. Although appellee Pelham's complaint originally sought equitable as well as legal relief, the equitable aspects of the case have been extinguished by

stipulations of the parties, by the dismissal of the State Board of Education and the State Superintendent of Schools as parties defendant, and by the payment of the disputed funds into the registry of the superior court. The remaining issues concerning the interpretation of the contract are properly before the court pursuant to Article VI, Section II, Paragraph VIII of the Georgia Constitution (Code Ann. § 2-2808). See *Graham v. Lynch,* 205 Ga. 230 (52 SE2d 850) (1949); *Gainesville Carpet Mart v. First Fed. Savings &c. Assn.,* 225 Ga. 315 (168 SE2d 159) (1969).

2. Appellant Mitchell County asserts that the trial court erred in ruling that the tax rebate funds were included within the "all funds . . ." provision of the contract. The basis for this assertion is that, when the contract was originally made in 1952, the funds at issue were not in existence. At that time, the only funds available to either party from the State Board of Education came from the Minimum Foundation Program, Ga. L. 1949, p. 1406. Therefore, Mitchell County contends, the tax rebate funds were not in the contemplation of the parties, and neither of the parties could have intended for the moneys to be included in their agreement.

"The cardinal rule of construction of contracts is to ascertain the intention of the parties. [Cit.] In determining such intention the courts must first look to the language of the instrument and, if that language be clear, the courts need look no further in ascertaining such intention. [Cits.]" *Undercofler v. Whiteway Neon Ad, Inc.,* 114 Ga. App. 644, 645 (152 SE2d 616) (1966).

The trial court in the instant case examined the language of the agreement and assigned the words their "usual and common signification." OCGA § 13-2-2 (2) (Code Ann. § 20-704); *Henderson v. Henderson,* 152 Ga. App. 846 (264 SE2d 299) (1979). Upon doing so, it held that the tax rebate funds were included within the agreement, reasoning that "[e]ven though the specific funds at issue were not available to school systems in 1952 when this contract was first entered into between the two boards, it is clear that these funds are 'funds which would ordinarily go to the Mitchell County Board of Education for those pupils from Mitchell County attending the Pelham Public Schools.' "

We find no error. The language of the agreement was not indistinct or uncertain of meaning or expression, so as to create an ambiguity. See *Salvatori Corp. v. Rubin,* 159 Ga. App. 369 (283 SE2d 326) (1981). "There is no construction required or even permissible when the language employed by the parties in the contract is plain, unambiguous and capable of only one reasonable interpretation. [Cit.]" *Pisano v. Security Mgt. Co.,* 148 Ga. App. 567, 568 (251 SE2d

798) (1978).

3. Appellant Mitchell County's next two enumerations of error concern the clause, "[s]ubject to approval of the State Board of Education," with which the contractual provision granting funds to Pelham begins. The trial court ruled that this language did not act as a limitation on the remainder of the provision, finding that "[t]here is nothing in the record to indicate that this clause is anything more than a recognition of the role that the State Board of Education plays as a conduit of all funds appropriated by the General Assembly to local boards of education."

Mitchell County asserts that the trial court erred in ruling that Pelham's receipt of the funds was not subject to a condition precedent. As authority for this assertion, Mitchell County relies on *Blue Ridge Apt. Co. v. Telfair Stockton & Co.,* 205 Ga. 552 (54 SE2d 608) (1949), wherein the Supreme Court held that the phrase "subject, however, to" created a condition precedent. In *Blue Ridge,* however, the Court construed the phrase in accordance with the intention of the parties to the contract in issue. The Court considered the literal definitions of the words, along with their context. Upon examining the entire contract, particularly the paragraph following the phrase "subject, however, to," the Court found that the parties had contemplated the creation of a condition precedent. The ruling was based not only on the words themselves, but also on a consideration of the circumstances of the particular case.

Similarly, in the instant case, the trial court made its determination after "consider[ing] the background of the contract and the circumstances under which it was entered into, particularly the purpose for the particular language to be construed." *Hortman v. Childress,* 162 Ga. App. 536, 538 (292 SE2d 200) (1982), citing *Johnson v. U. S. Fidelity &c. Co.,* 93 Ga. App. 336, 341 (91 SE2d 779) (1956). The court found that the particular purpose of the "subject to . . ." phrase in the contract in issue here was to acknowledge the regulatory and administrative functions of the State Board of Education and the necessity of complying with its directives. We find no error in the court's ruling that no condition precedent was contemplated or created. Consequently, the pleading and proof requirements relating to conditions precedent, OCGA §§ 9-11-9 (Code Ann. § 81A-109) and 13-3-4 (Code Ann. § 20-110), were inapplicable to Pelham's contractual claim.

4. Appellant's next enumeration of error is that the trial court improperly interpreted the word "district" as found in OCGA § 20-2-333 (Code Ann. § 32-860) to mean "district" as defined by the parties and not as provided by law. However, there is nothing

whatsoever in the order of the trial court to indicate that such an interpretation was made. This enumeration is apparently premised on the theory that such an interpretation of the word "district" would be necessary to support a finding that Pelham had a statutory right to the tax rebate funds under OCGA § 20-2-333 (Code Ann. § 32-860), independent of any contractual right.

Both parties have argued this point as though the trial court had found that Pelham in fact had an independent statutory right to the tax rebate funds. However, the trial court's order specifically states: "If there were not a contract between the two boards, then the 1980 amendment to the statute [OCGA § 20-2-333 (Code Ann. § 32-860)] would allow Mitchell County to count those students from Mitchell County attending the Pelham school in its average daily attendance," which means that Mitchell County would be entitled to the funds allocable to those particular students, absent the contract. "The record fails to indicate that the claimed error ever occurred. Thus, there is nothing to review. The burden is on the appellant to show error affirmatively by the record. [Cit.]" *Moore v. Trust Co. Bank,* 142 Ga. App. 877 (237 SE2d 471) (1977).

5. Mitchell County contends that the trial court erred in its failure to rule that the contract, if interpreted to include the contested tax rebate funds, violates public policy as enunciated in OCGA § 20-2-330 et seq. (Code Ann. § 32-858 et seq.).

Our state Constitution provides that any two or more boards of education "may contract with each other for the care, education, and transportation of pupils and for such other activities as they may be authorized by law to perform." Ga. Const. Art. VIII, Sec. V, Par. V (Code Ann. § 2-4505). "The manifest purpose of the people and the legislature as expressed in the Constitution and statutes is to allow flexibility in arranging for the education of the children of this state." *Wilson v. Strange,* 235 Ga. 156, 162 (219 SE2d 88) (1975).

The express purpose of the Tax Rebate Act is to afford local school systems the opportunity to provide relief to local school taxpayers from the unfair burden of school taxes, thereby giving such taxpayers an incentive to support a commitment to growth and quality of the public schools. OCGA § 20-2-330 (Code Ann. § 32-858). Although the act seeks to encourage tax relief, it does not *require* that any tax relief be afforded and it does not restrict the manner in which a local school system may apply the tax rebate funds in furtherance of educational purposes. See OCGA § 20-2-334 (c) (Code Ann. § 32-861). There is nothing in the act, including the 1980 amendment to OCGA § 20-2-333 (Code Ann. § 32-860) directing that the tax rebate funds be paid to the district in which a pupil resides, to indicate a legislative

policy or intent to impair a school board's constitutionally granted right to make binding contracts with other school boards.

The trial court did not err in upholding the contract and in enforcing it according to its terms. "It is a well settled rule that the courts will not interfere with the decisions of a school board unless the act violates the law or is a gross abuse of discretion. [Cits.] The contract itself does not violate any recognized principles of the law of contracts. The provisions for mutual exchange of pupils and the state funds allocated to each transferring student constitute sufficient consideration. [Cit.]" *Wilson v. Strange,* supra at 161.

6. The final enumeration of error is that the trial court failed to find that Pelham was estopped to recover any tax rebate funds for the 1980-81 school year. Those funds were paid to Mitchell County before the instant suit was filed, and Mitchell County lowered its proposed millage rate to reflect the rebate. Mitchell County contends that Pelham should have taken legal action to prevent this occurrence, and, having failed to do so, should not now be permitted to recover the funds. No authority is cited for this proposition, and we have found none to support it.

"In order for an equitable estoppel to arise, there must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence as to amount to constructive fraud, by which another has been misled to his injury." OCGA § 24-4-27 (Code Ann. § 38-116). There is no evidence showing that Pelham, by declarations or by conduct, misled Mitchell County to the latter's detriment. See *Gainesville Glass Co. v. Don Hammond, Inc.,* 157 Ga. App. 640 (278 SE2d 182) (1981). The trial court did not err in rejecting Mitchell County's claim of estoppel.

*Judgment affirmed. Deen, P. J., and Banke, J., concur.*

DECIDED NOVEMBER 30, 1983 —
REHEARING DENIED DECEMBER 13, 1983 — 

*William F. Tyson, Jr.,* for appellants.
*Sam S. Harben, Jr., Phillip L. Hartley, Patrick W. McKee, Assistant Attorney General,* for appellees.