## 73878. BROOKS v. FOREST FARMS, INC.
(357 SE2d 604)

CARLEY, Judge.

Appellee-defendant Forest Farms, Inc., purchased realty and exe-

cuted a promissory note and deed to secure debt in favor of the several members of the Martin family (the Martins) who were the sellers of the property. Thereafter, appellee sold the property to appellant-plaintiff Brooks, who assumed the indebtedness that appellee owed to the Martins. Subsequent to appellant's purchase of the property, he entered into a separate agreement with appellee, which agreement contained the following provision: *"ASSUMPTION OF LIABILITY, INDEMNITY.* [Appellant] assumes all liability for payment of the existing indebtedness (to the Martins or otherwise) on the Property and to idemnify and hold [appellee] harmless from all claims, actions, demands, liabilities and costs asserted against or reasonably incurred by [appellee] as obligor under any such indebtedness accruing from the date hereof [November 27, 1984,] until such time as said indebtedness is paid in full. In consideration of the within indemnity, [appellee] agrees that it will not modify or amend any such indebtedness and shall immediately notify [appellant] of any demand, notice, or claim thereto pertaining."

After entering into this agreement, appellant failed to make a timely payment on the note that was held by the Martins. On February 8, 1985, appellee received a letter from the Martins, the purpose of which was to accomplish the following: to declare the existence of a default; to accelerate the entire indebtedness; to give notice of the intent to institute foreclosure proceedings; and, to give notice of the enforcement of the provision in the note relative to attorney's fees if the accelerated indebtedness was not paid within 10 days. Within the 10 days following its receipt of the Martins' letter, appellee did not undertake either to pay the Martins the accelerated indebtedness or to notify appellant of its receipt of the Martins' demand and notice. Apparently, it was not until March 4, 1985 that appellee informed appellant of its receipt of the Martins' letter. After he had finally been informed of the consequences of his default, appellant sought to restrain the Martins' foreclosure proceedings. When his efforts to restrain the foreclosure proceedings proved unsuccessful, appellant paid the Martins the entire accelerated balance of the indebtedness, including the attorney's fees to which the Martins were entitled under the note.

Appellant then filed this action against appellee, asserting that appellee had breached the agreement of November 27, 1984 by failing to give appellant immediate notification after its receipt of the Martins' letter on February 8, 1985. As the result of this alleged breach, appellant sought to recover the attorney fees that he had incurred in his unsuccessful effort to restrain the Martins' foreclosure proceedings, as well as the attorney fees that he had ultimately paid to the Martins. Appellee answered, denying the material allegations of appellant's complaint and raising numerous defenses. Thereafter, appel-

lee and appellant filed cross-motions for summary judgment. The trial court conducted a hearing on the motions and entered an order which denied appellant's motion and granted summary judgment in favor of appellee. Appellant appeals from that order, enumerating as error both the denial of summary judgment in his favor and the grant of appellee's motion for summary judgment.

1. The first issue for resolution is the construction and interpretation of the November 27, 1985 agreement. " 'Where no matter of fact is involved, the construction of a plain and definite contract, if needed, is a matter of law for the court. But a contract is not ambiguous, even where difficult to construe . . . unless and until an application of the pertinent rules of interpretation leaves it uncertain as to which of two or more possible meanings represents the true intention of the parties.' [Cits.] ' "(E)ven ambiguous contracts may be construed by the courts, and a jury question is presented only when the application of the rules of construction fails to resolve the ambiguity." ' [Cits.] The construction and interpretation of a contract, being a matter of law for the court, may properly be disposed of by summary judgment. [Cit.]" *Stern's Gallery of Gifts v. Corporate Property Investors*, 176 Ga. App. 586, 593-594 (4) (337 SE2d 29) (1985).

Appellee urges that the contractual provision for the giving of notification to appellant is properly construed as creating only a condition precedent to its own right to seek enforcement of the indemnity provision against appellant. Contractual "[c]onditions may be precedent or subsequent. A condition precedent must be performed before the contract becomes absolute and obligatory upon the other party." OCGA § 13-3-4. Thus, appellee asserts that a failure on its part to give timely notification cannot be construed as providing appellant with his own independent claim for breach of contract, but could only result in affording appellant a defense against indemnification.

In determining whether the contractual provision in issue contemplates appellee's act of notification as only a condition precedent to appellant's obligation to indemnify, consideration must be given to "the literal definitions of the words, along with their context." *Cowen v. Snellgrove*, 169 Ga. App. 271, 274 (3) (312 SE2d 623) (1983). The agreement between the parties in this case "did not provide that [appellee] should be permitted [to seek idemnification from appellant] 'on condition that,' or 'if,' or 'provided,' [appellee had given notification to appellant]; nor are there other words of conditions contained in the agreement necessary to make this a condition precedent. [Cits.]" *Self v. Smith*, 216 Ga. 151, 153 (1) (115 SE2d 355) (1960). Instead, the provision clearly provides for appellant's own personal agreement to indemnify appellee, "[i]n *consideration* of [which] indemnity [agreement by appellant, appellee] *agree[d]*" that it would neither modify nor amend the indebtedness owed to the Martins and

that it would also give certain notification to appellant. (Emphasis supplied.) It is clear and unambiguous that appellee's "agree[ment]" is intended to be the "consideration" that is afforded to appellant for appellant's return agreement to indemnify appellee. Thus, the language in question is not to be construed as merely a condition precedent to appellant's liability to appellee on the indemnification agreement. Compare *Tuzman v. Leventhal*, 174 Ga. App. 297 (329 SE2d 610) (1985). Appellant agreed to an otherwise unconditional indemnification of appellee with regard to the indebtedness and, in return, appellee unconditionally agreed not to modify or amend that indebtedness and also to give certain notification to appellant. "The parties each being free to make such agreement or to refrain from so doing, their mutual promises and covenants afford consideration the one to the other. [Cits.]" *Benton v. Roberts*, 41 Ga. App. 189, 190 (3a) (152 SE 141) (1929).

Appellee further urges that, if its duty to give notification to appellant is absolute rather than merely conditional, then its absolute duty would not extend to the giving of notification to appellant of the Martins' letter of February 8, 1985. The agreement provides that appellee "will not *modify or amend* any . . . indebtedness [secured by the property] and shall immediately notify [appellant] of any demand, notice, or claim *thereto pertaining.*" (Emphasis supplied.) According to appellee, the phrase "thereto pertaining" can only be construed as a reference back to a "modif[ication] or amend[ment]" of the terms of the indebtedness. Thus, appellee urges a construction of the agreement such that its duty was only to notify appellant of "any demand, notice, or claim" pertaining to a "modif[ication] or amend[ment]" of the terms of the indebtedness rather than to notify appellant of "any demand, notice, or claim" pertaining to the otherwise unmodified or unamended indebtedness itself. Since the Martins' letter of February 8, 1985 was not a "modif[ication] or amend[ment]" of the terms of the indebtedness, appellee contends it had no obligations to give appellant notice thereof.

The agreement does not refer specifically to a modification or amendment of the terms of the indebtedness. It refers only to the position that appellee itself would take with regard to any such modification or amendment. Insofar as appellee had otherwise agreed that it would *not* modify or amend the indebtedness, there would certainly be no reason for any further agreement on its part to notify appellant of "any demand, notice, or claim" as might pertain to such a modification or amendment. It is clear and unambiguous that appellee agreed that it would perform some actions and would refrain from other actions with regard to the *then-existing indebtedness.* Appellee agreed that it would not modify or amend the indebtedness as it then existed and further agreed to notify appellant of any demand, notice,

or claim as might pertain to the then-existing indebtedness. Contrary to appellee's assertions, this interpretation of the agreement does not result in merely requiring the performance of the superfluous act of notifying appellant that his own failure to make a timely payment constituted an act of default. The agreement contemplates notification to appellant that the Martins had elected to use that act of default as the basis for accelerating the entire indebtedness and that they had given notice of their intention to seek attorney's fees if the accelerated balance was not paid within 10 days.

Accordingly, we hold that the provision does not create a mere condition precedent to the enforceability of the indemnity agreement against appellee. It creates mutual unconditional obligations. Appellee's unconditional obligation was not merely to refrain from amending or modifying the then-existing indebtedness. Appellee was also obligated to notify appellant of "any demand, notice, or claim" pertaining to the then-existing indebtedness.

2. Having determined that no genuine issue of material fact remains with regard to the construction and interpretation of the agreement, we turn to whether any genuine issue of material fact remains with regard to appellee's breach of that agreement.

Appellee's contractual obligation was to notify appellant "immediately" of "any demand, notice or claim" pertaining to the then-existing indebtedness on the property. As we have held in Division 1, the Martins' letter that appellee received on February 8, 1985 is clearly within the class of communications of which appellant was entitled to be given notification. " 'Immediately' has been construed in many cases to mean with reasonable diligence and within a reasonable length of time in view of attending circumstances of each particular case. [Cits.]" *Bituminous Cas. Corp. v. J. B. Forrest &c., Inc.*, 132 Ga. App. 714, 719 (2) (209 SE2d 6) (1974). There is no need to determine the outside chronological limits of "immediate" notice to appellant of appellee's receipt of the Martins' letter. It is clear that, whatever the permissible parameters of "immediate" notice, those parameters have been exceeded under the facts of this case. Appellee's failure to give notice to appellant until some 24 days after its receipt of the Martins' 10-day letter is a breach of its contractual obligation as a matter of law. See generally *Hawkins v. Studdard*, 136 Ga. 727, 729-730 (71 SE 1112) (1911).

3. The remaining issue is that of damages. "Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach." OCGA § 13-6-2.

The initiation of foreclosure proceedings was the ultimate result of appellant's own act of default, which default had *already* resulted

in the Martins' acceleration of the entire indebtedness by February 8, 1986. Assuming that appellee had complied with its agreement and given appellant immediate notification of the Martins' letter, appellant would have had only two choices. He could have elected to contest the validity of the Martins' exercise of their right to assert his default as the basis for their acceleration of the entire indebtedness. Had appellant chosen this course of action on February 8, 1985, he would nevertheless have incurred legal expenses in any effort to restrain the Martins from pursuing foreclosure as their elective response to his act of default. Appellant's other choice was to acknowledge the validity of the Martins' exercise of their right to declare his default and accelerate the entire indebtedness. If upon his timely notification, appellant had chosen this course of action, he could have paid the entire accelerated indebtedness by February 18, 1985 and thus could have avoided the additional imposition of attorney fees.

Despite appellant's untimely notification by appellee, appellant had exactly the same option that he otherwise would have had on February 8, 1985 to contest the validity of the Martins' exercise of their rights. He could seek to restrain the Martins' pursuit of foreclosure but incur legal expenses by doing so. On March 4, 1985, appellant also had the same option to obviate the Martins' pursuit of foreclosure, in that he could simply have paid the entire accelerated indebtedness. However, that option now required that he incur the additional imposition of attorney's fees. Accordingly, the only option that was lost to appellant as the result of his untimely notification by appellee was that of paying the entire accelerated balance before February 8, 1985 and avoiding payment to the Martins of attorney's fees. Exactly as he could have done had he received timely notification, appellant elected to contest the validity of the Martins' exercise of their rights and he sought to restrain their resort to the foreclosure remedy. When that option proved unsuccessful, appellant paid the Martins the entire accelerated indebtedness and their attorney's fees.

Thus, appellant's expenditure of attorney's fees to restrain the foreclosure proceedings was neither the result of appellee's breach of its obligation to give timely notice to appellant nor was it in mitigation thereof. That expenditure was the sole result of appellant's own failure to make a timely payment to the Martins and of his own election to contest their exercise of the right to declare a default and an acceleration. That failure and election was, as between the Martins and appellant, in existence on February 8, 1985, notwithstanding the contractual agreement as between appellee and appellant. Appellee's breach of its agreement to notify appellant had only the effect of depriving appellant of the opportunity to choose to avoid liability to the Martins for attorney fees by making payment of the entire indebtedness no later than February 18, 1985. It is only those attorney fees

that are recoverable from appellee.

4. The trial court erroneously granted appellee's motion for summary judgment and erroneously denied summary judgment in favor of appellant as to the amount he paid to the Martins as attorney's fees pursuant to the note which was in addition to the entire indebtedness owed to the Martins. The trial court correctly granted summary judgment in favor of appellee and correctly denied summary judgment in favor of appellant as to the attorney fees incurred by appellant in his unsuccessful effort to restrain the Martins' foreclosure proceedings.

*Judgment affirmed in part and reversed in part. Banke, P. J., and Benham, J., concur.*

DECIDED MAY 20, 1987.

*David E. Spalten, Lex Allen Watson II,* for appellant.
*Alan M. Wolper, George L. Murphy, Jr.,* for appellee.