## S02A1073. HORWITZ v. WEIL.
(569 SE2d 515)

CARLEY, Justice.

Sheryl Horwitz and Gary Weil were divorced in 1991, and the final decree approved and incorporated by reference a settlement agreement. In April of 2001, Ms. Horwitz filed a motion seeking to hold Weil in contempt, claiming that he failed to comply with Paragraph 7 (a) of the agreement, which provides, in relevant part, that,

> [n]otwithstanding anything herein to the contrary, the husband agrees that upon the sale of the marital residence or on April 1, 2001, whichever event first occurs, he shall pay from the proceeds of the sale to the Wife all of the net proceeds from the sale of the house, but not more than $50,000.00.

The trial court found that the provision was not ambiguous and that Weil's payment was contingent upon his sale of the house prior to April 1, 2001. Because this condition was not met, the trial court concluded that Weil was relieved of the obligation and, therefore, could not be held in contempt. Ms. Horwitz sought permission to file a discretionary appeal, and we granted the application in order to determine whether the trial court erred in finding that the provision was

unambiguous and unenforceable.

Ambiguity in a contract is defined as duplicity, indistinctness or an uncertainty of meaning or expression. *Kuehn v. Selton & Assoc.*, 242 Ga. App. 662, 668 (7) (530 SE2d 787) (2000). The intent of the parties' agreement in this case is clear in at least one respect. It specifically identifies "the proceeds of the sale" as the source of the money Weil is to pay to his former wife. However, the entirety of the agreement "should be looked to in arriving at the construction of any part. . . ." OCGA § 13-2-2 (4). See also *Connell v. Guarantee Trust Life Ins. Co.*, 246 Ga. App. 467, 469 (1) (541 SE2d 403) (2000). Therefore, the specificity with which the contract designates the source of the funds to be paid does not compel the conclusion that Paragraph 7 (a) is unambiguous. "The contract is to be considered as a whole, and each provision is to be given effect and interpreted so as to harmonize with the others. [Cit.]" *Ga. Farm Bureau Mut. Ins. Co. v. Gaster*, 248 Ga. App. 198, 199 (546 SE2d 30) (2001).

Although the provision indicates that payment will be made from the proceeds of a sale of the residence, it does not expressly condition Weil's obligation to pay upon the sale of the house on or before April 1, 2001. Instead, it specifies that Ms. Horwitz is to receive any sum to which she is entitled either at the time of the sale "*or* on April 1, 2001, *whichever* event first occurs. . . ." (Emphasis supplied.) This requirement that Weil pay his ex-wife, with or without a sale, is not conditional. See *Brooks v. Forest Farms*, 182 Ga. App. 901, 903-904 (1) (357 SE2d 604) (1987). He must pay up to $50,000 of the "net proceeds" no later than the designated date. In interpreting the agreement, the language imposing this unconditional obligation to pay upon the occurrence of the earlier of two identified events cannot be ignored. The courts "should avoid any construction that renders portions of the contract language meaningless. [Cit.]" *Deep Six v. Abernathy*, 246 Ga. App. 71, 74 (2) (538 SE2d 886) (2000).

When considered in its entirety, the agreement initially imposes an unconditional requirement that Weil pay in either of two specified events, but then provides for a source of payment which presumably would exist only upon the occurrence of one of the alternatives. Under these circumstances, there is an ambiguity as to the rights and responsibilities of the parties when April 1, 2001 passes and there are no actual sale proceeds. This ambiguity requires application of the usual rules of construction. See *Nobel Lodging v. Holiday Hospitality Franchising*, 249 Ga. App. 497, 498 (1) (548 SE2d 481) (2001).

One of those rules "is to consider the background of the contract and the circumstances under which it was entered into, particularly the purpose for the particular language to be construed. [Cit.]" *Hortman v. Childress*, 162 Ga. App. 536, 538 (292 SE2d 200) (1982).

Paragraph 7 (a) appears in the "Division of Property" portion of the settlement agreement, wherein the parties "intend[ed] . . . to divide equitably between them the property acquired during the marriage." Thus, the evident purpose of Paragraph 7 (a) was to reimburse Ms. Horwitz for releasing to Weil her present interest in the marital residence, in exchange for a share of the equity, not to exceed $50,000, payable to her within ten years from the divorce decree. Under this interpretation, her right to be paid became "fixed" on April 1, 2001 even though Weil still owned the house. See *Spivey v. McClellan*, 259 Ga. 181, 182 (378 SE2d 123) (1989). Moreover, if payment was contingent upon a sale of the house, Paragraph 7 (a) would be a completely illusory agreement. Weil could evade payment simply by waiting to sell the residence until after April 1, 2001. However, the law does not permit the construction of an agreement which will give one party

> the right to destroy it by a simple refusal to comply with it, unless the terms of the contract are so clear and unambiguous as to make irresistible the conclusion that no other result could possibly be reached, and that such was the intention of the parties. [Cit.]

*Finlay v. Ludden & Bates Southern Music House*, 105 Ga. 264, 267 (31 SE 180) (1898). Here, there is no such unambiguous intent to create an illusory contract. The parties did not expressly agree that, unless Weil sold the house by April 1, 2001, he would not pay. To the contrary, Paragraph 7 (a) provides that Ms. Horwitz will be paid even though the residence was not sold by that date.

Under Weil's interpretation, he obtained his former wife's interest in the marital residence in 1991 in exchange for an entirely unilateral promise to pay her only if he chose to sell the residence before April 1, 2001. However, applying the applicable rules of construction to resolve the ambiguity, Weil's obligation to pay became unconditional after April 1, 2001, even though he did not sell the house by that date. See *Hayward v. Lawrence*, 252 Ga. 337 (312 SE2d 609) (1984). The agreement does not require the existence of "actual" sales proceeds, and the lack of such proceeds does not defeat Ms. Horwitz's right to payment. The intent of the parties was that she be paid either from actual sales proceeds, if the house sold before April 1, 2001, *or* in accordance with a hypothetical sale occurring on that date, if it did not. See *Hayward v. Lawrence*, supra.

With regard to the amount Ms. Horwitz is entitled to recover, the settlement agreement defines "net proceeds" as

> those funds remaining after the deduction from the sales

price of the then existing balances on the first and second mortgages . . . [,] real estate commissions not to exceed six percent (6%), [and] other ordinary, usual and necessary costs of sale.

"Price" is generally defined as "market value." Black's Law Dictionary, p. 1070 (5th ed. 1979). The fair market value of the property on April 1, 2001 is capable of proof by opinion testimony. OCGA § 24-9-66. Likewise, the balances on the outstanding mortgages and the amounts of the real estate commission can be shown by probative evidence. Expert testimony would be admissible to show the meaning and amount of the "ordinary, usual and necessary costs of sale." See *Daniel v. Maddox-Rucker Banking Co.*, 124 Ga. 1063 (2) (53 SE 573) (1906). Once a figure for all of the relevant factors is determined, the "net proceeds" of a hypothetical sale becomes a simple matter of calculation. See *Bunnell v. Rogers*, 263 Ga. 811, 813 (440 SE2d 12) (1994). If that resulting amount is $50,000 or less, Ms. Horwitz is entitled to all of it. Weil would be entitled to any excess over $50,000.

The judgment of the trial court finding that Paragraph 7 (a) is unambiguous and unenforceable is reversed, and the case is remanded for further proceedings not inconsistent with this opinion. See *Millner v. Millner*, 260 Ga. 495, 497 (4) (397 SE2d 289) (1990); *Nolan v. Moore*, 241 Ga. 156 (244 SE2d 10) (1978).

*Judgment reversed and case remanded with direction. All the Justices concur.*

DECIDED SEPTEMBER 16, 2002.

*McCorkle, Pedigo & Johnson, Carl S. Pedigo, Jr., Kenneth P. Johnson*, for appellant.

*Duffy & Feemster, Dwight T. Feemster, Matthew M. Bush*, for appellee.