[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14356
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-01488-WCO

FIRST CITIZENS BANK AND TRUST COMPANY, INC.,

Plaintiff-Appellee,

versus

RIVER WALK FARM, L.P.,
COVINGTON RIVER PARTNERS, L.P.,
LIBERTY LAND GROUP, LLC,
ROBERT A. ANCLIEN,
TAYLOR B. KNOX,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(August 18, 2015)

Before ED CARNES, Chief Judge, TJOFLAT and WILSON, Circuit Judges.

PER CURIAM:

Appellants River Walk Farm and its guarantors defaulted on an approximately $6 million loan. First Citizens Bank & Trust Company (FCBT), the holder of the promissory note, filed this action to recover a deficiency judgment. The district court granted summary judgment to FCBT and awarded damages totaling $7,112,025.91. On appeal, River Walk and its guarantors contend that the district court erred in finding that there was sufficient evidence to establish the amount of damages owed under the note.

## I.

The underlying facts are not in dispute. In 2009, River Walk took out a loan for over $6 million from Georgian Bank. River Walk executed a promissory note in favor of Georgian Bank and secured the note with the security deeds to real property in Newton County, Georgia. Covington River Partners, Liberty Land Group, Robert Anclien, and Taylor Knox executed individual guaranties under the note. Covington River provided a security deed to real property as collateral for its guaranty. Georgian Bank later closed and entered receivership.

The FDIC then entered into a Purchase and Assumption Agreement with FCBT under which FCBT took possession of, among other loans, the note, the security deeds, and the guaranties for the River Walk loan. River Walk defaulted on the loan in 2010. Although River Walk and the guarantors (hereinafter, River Walk) were notified of the default and given time to cure, they made no payments.

2

In January 2011, FCBT foreclosed on the River Walk and Covington River properties in an attempt to satisfy the outstanding debt.  It obtained $1,215,500 for the River Walk property and $995,000 for the Covington River property.

FCBT filed a complaint in federal court against River Walk for breach of contract seeking to obtain the deficiency remaining under the note.[1]  FCBT alleged the outstanding indebtedness included principal in the amount of $4,474,848.60, accrued interest in the amount of $1,690,498.27, and continued post-default interest of $1,988.82 per day.

FCBT moved for summary judgment, arguing that it had established its prima facie case by showing it was the holder of the executed note and guaranties.  To show its damages, FCBT submitted an affidavit from Richard Spink.  In the affidavit, Spink stated that he was the current Senior Vice President of FCBT and the former Executive Vice President of Georgian Bank.  In those capacities, he was the custodian of the business records and was familiar with River Walk's loan and the record-keeping methods of both banks.  He then explained the outstanding balance of principal and interest and the amounts received from the foreclosures that were credited back to the outstanding debt.  He referenced the note, the guaranties, the default letter, and the notice of foreclosure, all of which were

---

[1] Attached to the complaint were copies of the note and guaranties, along with the allonge, which is a piece of paper attached to the note for endorsement when there is no room for endorsement on the note itself.  *See Ware v. Multibank 2009-1 RES-ADC Venture, LLC*, 758 S.E.2d 145, 151 n.14 (Ga. Ct. App. 2014).

3

attached to the complaint.  Spink calculated the total outstanding indebtedness as $6,579,021.75, which included attorney's fees in the amount of 15 percent of the outstanding debt.  Attached to the affidavit was a one-page payoff statement.  The district court granted FCBT's motion for summary judgment, awarding damages of $4,474,848.60 in principal and attorney's fees and post-default interest of $2,637,177.31, for a total award of $7,112,025.91.

This is River Walk's appeal.

## II.

We review *de novo* the district court's grant of summary judgment.  *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1314 (11th Cir. 2011).  We apply the same legal standards as the district court.  *Centurion Air Cargo v. UPS*, 420 F.3d 1146, 1149 (11th Cir. 2005).  Summary judgment is appropriate if "there is no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

On appeal, River Walk argues that:  (1) Spink's affidavit was insufficient evidence to support the award of damages; (2) a shared-loss provision in the FDIC purchase agreement precluded any claim of actual damages because the FDIC was obligated to reimburse FCBT for any loss; and (3) Spink's affidavit incorrectly

determined the amount of attorney's fees as 15 percent of the outstanding debt rather than costs actually incurred.[2]   We address each issue in turn.

### III.

The district court did not err in finding Spink's affidavit sufficient to establish the amount of damages owed under the note.

It is undisputed that FCBT is the holder of the note, that the note and the guaranties were duly executed by River Walk and the guarantors, and that they are in default.  Therefore, FCBT established a prima facie right to judgment as a matter of law and "[t]he burden . . . shift[ed] to defendants to produce evidence showing a different amount owed and thereby creating a jury issue." *Morey v. Brown Mill Co.*, 469 S.E.2d 387, 390 (Ga. Ct. App. 1996); *see also Fielbon Dev. Co., LLC v. Colony Bank of Houston Cnty.*, 660 S.E.2d 801 (Ga. Ct. App. 2008) ("A plaintiff seeking to enforce a promissory note establishes a prima facie case by producing the note and showing that it was executed.  Once that prima facie case

---

[2] In the district court, River Walk also argued that Spink's affidavit was inadmissible hearsay.  That argument is mentioned in River Walk's initial brief on appeal, but only in passing and without supporting arguments or authority.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").  River Walk attempts to resurrect its challenge to the admissibility of the affidavit in its reply brief, but it is too late.  *See id.* at 683 (collecting decisions where we declined to address arguments raised for the first time in a reply brief).  In any event, we agree with the district court that Spink's affidavit was admissible evidence under the business records exception to the hearsay rule.  *See* Fed. R. Evid. 803(6).

has been made, the plaintiff is entitled to judgment as a matter of law unless the defendant can establish a defense.") (quotation marks omitted).

The only question that remains, then, is whether River Walk has offered sufficient evidence to raise a triable issue of fact concerning the amount of damages.[3]  But River Walk has offered *no* evidence upon which a jury could conclude that the amount of damages outlined by Spink is incorrect.   Instead, it merely argues that Spink's affidavit is not enough to show the amount owed on the note.  That argument, without more, is not enough to defeat summary judgment under Rule 56.  *See Ricci v. DeStefano*, 557 U.S. 557, 586, 129 S. Ct. 2658, 2677 (2009) ("[W]here the nonmoving party 'will bear the burden of proof at trial on a dispositive issue,' the nonmoving party bears the burden of production under Rule 56 to 'designate specific facts showing that there is a genuine issue for trial.'") (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548 (1986));

---

[3] This question is governed by federal law.  *See Hutcherson v. Progressive Corp.*, 984 F.2d 1152, 1155 (11th Cir. 1993) (stating, in the context of a damages issue, that state law "provides the controlling substantive law" but "federal law governs the sufficiency of the evidence necessary to preclude a grant of summary judgment"); *ABC-Paramount Records, Inc. v. Topps Record Distrib. Co.*, 374 F.2d 455, 460 (5th Cir. 1967) ("[I]n a diversity case, state law controls as to the substantive elements of plaintiff's case and of defendant's defense, but the sufficiency of the evidence to raise a question of fact for the jury is controlled by federal law.") (quotation marks omitted).  For that reason, River Walk's reliance on Georgia Court of Appeals decisions is misplaced.   Importantly, we are not asked here to decide what damages are recoverable, or what elements must be proven to recover those damages, or whether an award of damages is excessive — or any other substantive question that would be governed by state law. *See, e.g.*, *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992); *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1554 (11th Cir. 1985); *Quality Foods, Inc. v. U.S. Fire Ins. Co.*, 715 F.2d 539, 542 & n. 2 (11th Cir. 1983); *Kicklighter v. Nails by Jannee, Inc.*, 616 F.2d 734, 737–38 (5th Cir. 1980).  The only question we face is whether River Walk has offered sufficient evidence to create a triable issue on the amount of damages owed under the terms of the note.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986) ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.").

IV.

River Walk next argues that FCBT cannot prove that it suffered any "actual damages" as a result of its default because, under the terms of the FDIC purchase agreement, certain losses are shared between the assuming bank (FCBT) and the FDIC.[4]  To make that argument, River Walk relies exclusively on the Fifth Circuit's decision in *Amwest Savings Ass'n v. Statewide Capital Inc.*, 144 F.3d 885 (5th Cir. 1998).

*Amwest* is not binding on this Court.  Even if it were, it is distinguishable. Suffice it to say that this case, unlike *Amwest*, concerns a promissory note, which is a negotiable instrument that carries an absolute obligation to pay.  *See Ga. Code* § 11-3-104(a); *L.D.F. Family Farm, Inc. v. Charterbank*, 756 S.E.2d 593, 597 (Ga. Ct. App. 2014) ("A promissory note is an unconditional contract whereby the

---

[4] FCBT cites our decision in *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927 (11th Cir. 2013), in support of the proposition that River Walk does not have standing to rely on the terms of the purchase agreement as a defense to liability on the note.  In *Interface Kanner*, we held that a plaintiff did not have standing to enforce an agreement that it did not enter into or stand to benefit from.  *See id.* at 931–33.  But River Walk is not a plaintiff and it is not seeking to enforce the purchase agreement; it is merely arguing that FCBT's losses may have been recovered through the agreement and therefore do not qualify as recoverable damages in this lawsuit.  We have never required a defendant to establish "standing" to make an argument about what damages he does or does not owe, and we will not do so here.

maker engages that he will pay the instrument according to its tenor.  It is well established that a promissory note may not be modified by the imposition of conditions not apparent on its face.") (quotation marks omitted).  Once FCBT purchased the note at issue here, it was entitled to enforce it according to its terms — meaning for the full amount due and payable under the note — regardless of how much it paid for the note or whether it received other monies from third parties (including the FDIC) as a result of losses suffered due to River Walk's default.  *See Ga. Code* § 11-3-203(b) (stating that the transfer of a negotiable instrument, "whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument").

We also note that if the purchase agreement did in fact result in FDIC payments to FCBT for losses incurred as a result of River Walk's default, the agreement further requires FCBT to reimburse to the FDIC any monies it recovers from this lawsuit.  In other words, FCBT will not benefit from "double recovery"; instead, it will receive what it would have received had River Walk not defaulted on its obligation under the note, which is precisely what it is entitled to under Georgia law.  *See Ga. Code* § 13-16-1 (providing that "[d]amages are given as compensation for the injury sustained as a result of the breach of a contract").

For these reasons, we reject the argument that the shared-loss provision of the purchase agreement precludes FCBT from showing actual damages.

8

V.

Finally, River Walk argues that the court improperly determined the amount of damages by using a flat 15 percent rate for attorney's fees instead of the amount actually incurred. We review the district court's award of attorney's fees for abuse of discretion. *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999).

Under Georgia law, a court will enforce an attorney's fee provision in a promissory note up to 15 percent of the principal and interest owing on the note. *See Ga. Code* § 13-1-11(a). But the statute does not mandate the recovery of 15 percent attorney's fees in every case. *See S&A Indus., Inc. v. Bank Atlanta*, 543 S.E.2d 743, 749 (Ga. Ct. App. 2000).

> In this case, in the event of default, the note provides the following:

> Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's costs of collection, including court costs and fifteen percent (15%) of the principal plus accrued interest as attorney's fees . . . .

So if FCBT paid someone else to collect payment under the note, River Walk was required to pay "that amount" which included the "costs of collection" and "15 percent of the principal plus accrued interest fees." At issue is whether the phrase "that amount" limits the award to only those costs actually incurred.

9

The district court determined that the language was clear and unambiguous. We disagree that the terms are unambiguous, but arrive at the same result using ordinary rules of contract interpretation. *Certain Underwriters at Lloyd's of London v. Rucker Constr., Inc.*, 648 S.E.2d 170, 174 (Ga. Ct. App. 2007) (explaining that where a contract's terms are ambiguous, "the Court must attempt to resolve the ambiguity by applying the relevant canons of contract construction").

It is possible to construe the phrase "Borrower will pay Lender that amount" as limiting the fees to the amount actually incurred. But this phrase cannot be read in isolation. The rest of the paragraph explains that "that amount . . . includes . . . fifteen percent (15%) of the principal plus accrued interest as attorney's fees . . . ." *See Horwitz v. Weil*, 569 S.E.2d 515, 516 (Ga. 2002) ("The entirety of the agreement should be looked to in arriving at the construction of any part . . . . The contract is to be considered as a whole, and each provision is to be given effect and interpreted so as to harmonize with the others." (internal citation omitted)).

Moreover, the court properly applied the same 15 percent fee to the guarantors. Under the terms of the guaranty, "Guarantor agrees to pay upon demand all of the Lender's costs and expenses, including Lender's attorney's fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty." But the guaranty also contains the following Indebtedness Clause:

10

"Guarantor absolutely and unconditionally guarantees full and functional payment and satisfaction of Indebtedness . . . ."  The guarantors argue that their fees must be limited to the amount incurred due to the limiting language in the guaranty.  We disagree.   The phrase in the guaranty limiting fees to the amount incurred must be read in conjunction with the Indebtedness Clause, which requires the guarantors to "absolutely and unconditionally" cover fees.  *See Horwitz*, 569 S.E.2d at 516 (considering the agreement in its entirety).

**AFFIRMED.**