## S01A0484. HALL v. DAY.
(546 SE2d 469)

SEARS, Justice.

We granted an application to appeal in this matter in order to consider whether the trial court erred by construing a divorce decree

---

provision that requires the appellee to pay for his daughter to attend a state-supported university to mean that the appellee has to pay only an amount equal to the cost of tuition at a state-supported university located in Georgia. As explained below, we conclude that in reaching this ruling, the trial court misconstrued the unambiguous terms of the divorce decree and effectively modified the terms of that decree. Therefore, we reverse.

When appellant Kathie Hall (formerly Kathie Day) and appellee Thomas Day were divorced in 1991, they entered into a settlement agreement that was later incorporated into their divorce decree. The final decree provides that Day:

> [S]hall be responsible for all costs and expenses for [the couple's daughter's] college education at a public or state-supported university upon [her] graduation from high school. Costs and expenses shall include tuition, books, board and lodging ["educational expenses"] . . . so long as [the daughter] remains a full-time student. [This] obligation . . . shall terminate when the child graduates from college, obtains the age of twenty five (25) years or sooner and permanently ceases or discontinues her education, or marries, whichever occurs first.

The couple's daughter applied to the University of Georgia, but was denied admission. She was, however, admitted into Auburn University — a state-supported school located in Alabama — where she now attends college. Auburn's cost for out-of-state students exceeds the University of Georgia's costs for in-state students. Day refused to pay the full amount of his daughter's educational expenses at Auburn, insisting instead upon paying only an amount equal to the cost of an education at a state-supported university located in Georgia.

Hall filed a complaint for contempt, alleging that Day had violated the terms of their divorce decree by failing to pay the full costs of their daughter's education at Auburn University. For his part, Day denied the allegations of the complaint and alleged that Hall had prevented him from claiming his daughter as a dependent for federal and state income tax purposes.

After a hearing, the trial court held that the divorce decree did not obligate Day to pay all of the educational expenses associated with his daughter's attendance at Auburn University, but rather only obligated Day to pay a lesser amount equal to the cost of tuition at the University of Georgia. This Court granted Hall a discretionary appeal in order to consider that ruling.

1. A settlement agreement incorporated into a divorce decree is

construed according to the same rules that govern contractual interpretation in general, with the cardinal rule being to ascertain the intention of the parties.[1] Where any contractual term of a settlement agreement incorporated into a decree is clear, unambiguous, and capable of only one interpretation as written, the provision's plain meaning must be strictly enforced.[2]

In the present appeal, the relevant terms of the decree are clear and unambiguous — Day is obligated to pay educational expenses associated with his daughter's attendance at "a public or state-supported university." The decree does not state that the state-supported or public university attended by Day's daughter must be located in Georgia, nor does it state that Day shall pay no more for his daughter's educational expenses than the amount of tuition charged by a university located in Georgia. To the contrary, the decree is altogether silent as to where the public university to be attended by Day's daughter shall be located, and plainly states that Day is responsible for all educational expenses of an education at "a public or state-supported" university.

This does not mean, however, that the decree is without limits on Day's obligation to pay educational expenses. For example, Day is not obligated to pay for his daughter's education at a private university. Furthermore, Day is not obligated to pay for an education at a trade school, as the decree's plain terms obligate him to pay only for a "university education." Nor would Day be obligated to pay in the event his daughter permanently ceases or postpones her education, or if she marries, because the plain terms of the decree impose these conditions upon Day's obligation to pay for his daughter's college education. The decree's plain language does not, however, condition Day's obligation to pay educational expenses upon his daughter's attendance at a university located in Georgia, nor does it limit the amount Day must pay to the amount of tuition at a Georgia university.

The conditions imposed upon Day's obligation to pay for his daughter's college education, recounted in the preceding paragraph, demonstrate that the parties intended to place certain limitations upon that obligation. Those limitations are expressed without ambiguity in the settlement agreement that was incorporated into the decree. If Day had also intended to limit his obligation by requiring his daughter to attend a college located in Georgia, or had he intended to limit his expenses to those charged by a Georgia university, he could have insisted upon including language to that effect in

[1] *Cousins v. Cousins*, 253 Ga. 30, 31 (315 SE2d 420) (1984); *Head v. Hook*, 248 Ga. 818, 819 (285 SE2d 718) (1982).

[2] See *Head*, supra; *Baker v. Baker*, 257 Ga. 187 (356 SE2d 873) (1987).

the settlement agreement. However, no such language was included in the agreement by the parties. By construing the agreement to limit the amount Day must pay toward his daughter's public university education to the amount of tuition charged at a Georgia university when no such language appears in the decree, the trial court improperly modified the terms of the decree, and thereby abused its discretion.[3] The decree requires Day to pay the educational expenses of his daughter's public or state-supported university education, regardless of where that university is located.

In its order, the trial court incorrectly reasoned that the language obligating Day to pay for a "college education at a public or state-supported university" was intended to refer to a college or university located in Georgia. As explained above, the plain language of the decree does not support this interpretation of the parties' intention. To the contrary, we conclude that the plain language of the decree evidences the parties' intention to distinguish between a public university education and an education at a private university. Day is obligated by the decree to pay for the former, but not the latter.[4]

The trial court also abused its discretion by stating in its order that the decree obligates Day to pay only the cost of his daughter's college *tuition*. As explained above, the decree clearly obligates Day to pay "all costs and expenses for [the couple's daughter's] college education," including "tuition, books, board and lodging."

2. The divorce decree also requires Day to pay the costs of "all medical care and attention" provided to the couple's daughter, "including physicians, dentists, orthodontists, hospitalization . . . and all prescriptive drugs." In her complaint, Hall alleged that Day had violated the decree by failing to pay medical expenses incurred by the couple's daughter. The trial court ordered Day to pay $2,000 toward these expenses "to bring him current through November 24, 1999." On appeal, Hall claims that the couple's daughter's medical expenses exceed $6,000 and that the trial court's order is contrary to Day's obligation to pay all such expenses. However, the record is void of any evidence to substantiate Hall's claim regarding the amount of medical expenses incurred, and therefore this claim is rejected.

*Judgment reversed. All the Justices concur, except Carley, J., who dissents.*

---

[3] See *Perry v. Perry*, 265 Ga. 186, 188 (454 SE2d 122) (1995).

[4] In support of its ruling, the trial court reasoned that a Georgia resident's educational expenses at an out-of-state university are approximately equivalent to the expenses of a private university. To the contrary, the cost of an out-of-state student's education at a state-supported university like Auburn is considerably less than the costs of most comparable private institutions in this country.

DECIDED APRIL 30, 2001 —
RECONSIDERATION DENIED JUNE 4, 2001.

*Ricky E. Jones*, for appellant.
*Westmoreland, Patterson & Moseley, Bradley G. Pyles*, for appellee.