[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-12646

_____

D. C. Docket No. 6:09-cv-01504-GAP-GJK

BOND SAFEGUARD INSURANCE COMPANY,

Plaintiff-Appellee,

versus

DIANE ELIZABETH WARD, et al.,

Defendants,

JAMES ROBERT WARD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 17, 2012)

Before DUBINA, Chief Judge, JORDAN and ALARCÓN,* Circuit Judges.

_____

*Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by designation.

PER CURIAM:

Defendant-Appellant, Robert Ward ("Ward"), appeals the district court's grant of partial summary judgment in favor of Plaintiff-Appellee, Bond Safeguard Insurance Company ("Safeguard"), on certain indemnification claims. The partial summary judgment did not dispose of all claims against Ward, but the district court later granted, over Ward's objection, Safeguard's voluntary motion to dismiss its remaining claims without prejudice. For the reasons that follow, we reverse.

**I.**

*Procedural History*

On September 1, 2009, Safeguard filed a complaint alleging that it agreed to issue construction bonds on behalf of real estate companies owned by Ward. Safeguard asserted that it and Ward entered into an indemnification agreement in which Ward agreed to indemnify Safeguard for any losses it suffered in connection with the bonds.  Safeguard alleged in Count I of its complaint that it had been required to pay $7,542,371.94 based on claims made against bonds related to two real estate projects, the Villages of Norris Lake ("Norris Lake") and LR Riversea, LLC ("Riversea").  Safeguard claimed that Ward's companies failed to complete these two projects and sought indemnification for those monies.  Safeguard also sought compensation for any additional damages that Safeguard might suffer in the

2

future if Ward's companies defaulted on bonds for other real estate projects (Count I). Safeguard alleged a claim for *quia timet* / exoneration (Count II). Safeguard stated that it was reasonably likely that the other bond principals had defaulted or would default on their obligations, and Safeguard sought equitable relief "for those debts which are to become due and exoneration for those debts which have been demanded." Safeguard also sued Diane Elizabeth Ward, the Sarah Caitlin Ward Irrevocable Trust, and the Mallory Elizabeth Ward Irrevocable Trust in an effort to recover for allegedly fraudulent transfers and for the imposition of an equitable lien as a result of the fraudulent transfers (Counts III and IV). Safeguard further asserted a claim for tortious interference with a contract against Robert Ward (Count V).

Safeguard filed a motion for partial summary judgment. Ward filed a motion for continuance for additional time to conduct discovery, and the district court granted his motion. Subsequently, Ward filed a memorandum of law in opposition to Safeguard's motion. He argued that the General Agreement of Indemnity ("GAI") contained an explicit condition precedent requiring certain consultation which Safeguard failed to meet, that the failure to meet the condition precedent precluded liability for indemnity under Georgia law, and that genuine issues of material fact existed precluding the entry of summary judgment. Safeguard then

filed a reply arguing that it complied with all material conditions and that any requirement to consult was not a material term. Safeguard argued, and the district court agreed, that the phrase "after consultation with the Principal" neither contained any words of condition nor expressly created a condition precedent.

On November 10, 2010, the district court entered an order granting in part Safeguard's motion for partial summary judgment on the issue of Ward's liability under the GAI with regard to the bond defaults on the Norris Lake and Riversea projects. The court stated that to the extent Safeguard sought a partial final money judgment against Ward for $542,371.94 and $7,000,000 paid in connection with the bonds, the court could not grant such relief. The court noted that Safeguard indicated that it intended to seek indemnification for payments "expected to be made in regard to bonds issued for a project in Rutherford County, North Carolina." The court found that it could not grant summary judgment as to Ward's liability for the $7,542,371 in payments made on the two bonds because that would amount to judgment on part of a claim, which would be improper. However, it did determine that Safeguard was entitled to an order determining that the amounts paid in connection with the two real estate projects were not in dispute and the district court stated that Ward's liability under the GAI for the Riversea and Norris

4

Lake projects was fixed in the amount of $7,542,371.94 and would be deemed established at trial.

On March 14, 2011, the district court issued an order stating that the parties had settled, on the eve of trial, the fraudulent transfer, equitable lien, and tortious interference claims (Counts III, IV, and V). During a pretrial conference, Safeguard stated that $8,550,000 had been liquidated on certain bonds associated with a Jekyll Island project, and Safeguard had advised the district court it was seeking liquidation on that amount. The court noted that it advised Safeguard the court could try that claim. The court also informed the parties that any claims relevant to bond payments that Safeguard expected to have in the future would be bifurcated for trial at a later date, stating that most of the upcoming trial would involve the fraudulent transfers. When Safeguard sought a continuance on the trial of the $8.5 million Jekyll Island claim, the court dismissed with prejudice that portion of Count I in which Safeguard sought indemnification in regard to the Jekyll Island claim. The court advised the parties to inform the court regarding any remaining claims, their amounts, and when they may be tried. Ward responded that the only claims left that needed to be tried were those claims against Ward under Counts I and II of the complaint associated with the Rutherford County bond, the Stillwater Coves Subdivision bond, the Campbell County Regional Planning

bonds, the City of St. Mary bonds, and the Douglas County bonds.  He based this list of outstanding claims on the joint pretrial statement. He stated that because the claims appeared to have developed after discovery, he would probably need another 120 days to conduct depositions.

Safeguard then moved to dismiss any remaining unliquidated bond claims without prejudice and for the district court to enter final judgment on the Norris Lake and Riversea claims for which the court had already found Ward liable for approximately $7.5 million.  Safeguard further argued that dismissal without prejudice was appropriate because an essential element of Ward's liability on the unliquidated claims, namely Safeguard's payment on those claims, may or may not occur.  Also, although payment would be necessary to find indemnity liability against Ward on the unliquidated bond claims, Safeguard would be entitled to a finding of liability against Ward regarding the unliquidated bond claims based on the *quia timet* theory pled in Count II.  Safeguard further stated that if a dismissal without prejudice was not granted as to the unliquidated bond claims, then the remaining bond claims included: (1) $26,404,348 for Grey Rock (Rutherford County); (2) $1,929,718 for Cumberland Harbor (City of St. Mary's); and (3) $3,480,000 for Stillwater Coves/Clarks Hill.  It stated that if the court granted the voluntary motion to dismiss without prejudice as to the unliquidated bond claims,

6

then there would be no further claims left for adjudication and the court should enter final judgment in the amount of $7,542,371.94 in favor of Safeguard. The district court granted the dismissal.

On May 11, 2011, the district court clerk entered judgment in favor of Safeguard and against Ward in the amount of $7,542,371.94, per the direction of the district court.

*Facts*

Land Resource LLC ("LRC") was a developer of second-home and luxury developments until October 2008, when market conditions caused it to file bankruptcy under Chapter 11. Ward was the chairman and CEO of LRC. In 2003, Safeguard, a bonding company, agreed to issue construction bonds on behalf of LRC. Safeguard issued bonds in two high-end developments, Riversea and Norris Lake. In August 2003, Ward executed the GAI in favor of Safeguard under which Ward agreed to indemnify and hold Safeguard harmless from any and all losses associated with any bonds issued on behalf of LRC and its subsidiaries and affiliates. Paragraphs 3 and 5 of the GAI present the crux of the issue in this case:

3.    If the Company, ***after consultation with the Principal***, shall set up a reserve to cover any claim, suit or judgment under any such bond, the Indemnitors will, immediately upon demand,

7

deposit with the Company a sum of money equal to such reserve, such sum to be held by the Company as collateral security on such bond, and such sum and any other money or property which shall have been, or shall hereafter be, pledged as collateral security on any such bond shall, unless otherwise agreed in writing by the Company, be available, in the discretion of the Company, as collateral security on any other or all bonds coming within the scope of this agreement. (emphasis added).

5.    The Company, *after consultation with the Principal*, shall have the exclusive right to determine for itself and the Indemnitors whether any claim or suit brought against the Company or the Principal upon any such bond shall be settled or defended and its decision shall be binding and conclusive upon the Indemnitors. (emphasis added).

The phrase "after consultation with the Principal" was added to paragraphs 3 and 5 as a typewritten change to the contract.

By summer 2008, Safeguard received notices of default from both developments and demanded indemnification from Ward.  Safeguard met with

8

Ward on several occasions to discuss the various bond defaults. Notably, Ward testified that these discussions were not consultations as required under the GAI and that they did not include a discussion of whether any specific bond claims should be defended or settled. However, in an affidavit filed in support of his Rule 54(f) motion, Ward stated that in those meetings he did not have the personal assets with which to indemnify Safeguard and would not do so.

After investigating the claims made on the Norris Lake and Riversea projects, Safeguard paid $7,000,000 to settle the Norris Lake bond claims and $542,371.94 to settle the Riversea bond claims. To date, Ward has not indemnified Safeguard for the amounts it paid to settle the Norris Lake and Riversea bond claims.

## II.

We review a district court's grant of summary judgment *de novo* applying the same standards as the district court. *Harris v. H&W Contracting Co.*, 102 F.3d 516, 518 (11th Cir. 1996).

A district court's contract interpretation is a question of law and is subject to *de novo* review. *American Cas. Co. of Reading, Pa. v. Etowah Bank*, 288 F.3d 1282, 1285 (11th Cir. 2002).

## III.

The parties agree that Georgia law applies to the construction and interpretation of the GAI.  The purpose of contract interpretation under Georgia law is to ascertain the intention of the parties.  *Page v. Baylard*, 281 Ga.586, 587, 642 S.E.2d 14, 16 (Ga. 2007) (quoting *Hall v. Day*, 273 Ga. 838, 839–40, 546 S.E.2d 469, 471 (Ga. 2001)).  "Where the terms of the contract are clear and unambiguous, the court looks only to the contract to find the parties' intent." *Quality Foods, Inc. v. Smithberg*, 288 Ga. App. 47, 51, 653 S.E.2d 486, 491 (Ga. 2007) (internal quotations and citations omitted).  A contract should be construed by examining the agreement in its entirety, not by only looking at isolated clauses and provisions.  *Jones v. Destiny Indus., Inc.*, 226 Ga. App. 6, 6, 485 S.E.2d 225, 226 (Ga. Ct. App. 1997).  A condition precedent requires an occurrence or performance by one party before the other party will be bound to perform.  *Mut. Benefit Health & Accident Ass'n v. Hulme*, 57 Ga. App. 876, 876, 197 S.E. 85, 89 (Ga. Ct. App. 1938).  Under Georgia law, a condition precedent must be indicated by the words "on condition that," "if,"  "provided," or "other words of conditions" or by an express statement to the effect that a condition is to be construed as a condition precedent.  *Self v. Smith*, 216 Ga. 151, 153, 115 S.E.2d 355, 358 (Ga. 1960).

10

The district court relied upon *General Steel, Inc. v. Delta Building Systems Inc.*, 297 Ga. App. 136, 676 S.E.2d 451 (Ga. Ct. App. 2009) in determining that the phrase "after consultation with the Principal" was not a condition precedent. In *General Steel*, Delta Building Systems, Inc. ("Delta") established a credit account with General Steel for the purchase of construction supplies. *Id.* at 452. Eichholz, the personal guarantor for Delta, like Ward, signed a personal guaranty of Delta's indebtedness. *Id.* Similar to the GAI in this case, the parties in *General Steel* added the following handwritten provision to the guaranty: "[t]his guarantee shall be limited to the amount of $30,000 outstanding at any time. I will receive all billings reelect charges and payments on a monts [sic] basis." *Id.* Delta did not fulfill its obligation to pay General Steel, so General Steel sued to enforce the personal guaranty. *Id.* at 453. General Steel did not provide Eichholz with monthly billing statements. *Id.* Eichholz argued that he was not obligated to pay General Steel because it failed to comply with the condition precedent of providing monthly billing statements. *Id.* The Georgia Court of Appeals found that the handwritten provision stating that Eichholz would receive monthly billing was not a condition precedent because the provision "employed no explicit words of condition, and there [were] no expressions in the entirety of the guaranty to the effect that the cited provision [was] to be construed as a condition precedent." *Id.*

11

at 454.  The court held that a court cannot construe a contract to create a condition precedent when the clear and unambiguous language of the contract does not create one.  *Id.*

Ward argues that *General Steel* is distinguishable from the facts here because there, the requirement to provide monthly billings is "directory" and the provision contained no words of condition.  The district court read the phrase "after consultation with the Principal" and concluded that the phrase does not create a condition precedent in this case.  Ward argues that the district court's interpretation renders the phrase meaningless.

In this case, we conclude that the requirement of indemnification is conditioned on consultation.  It was clearly the intent of the parties to create a condition precedent because the phrase, "after consultation with the principal" was added to the GAI before it was signed, indicating the importance of the consultation.  Indeed, the importance of this phrase is supported by the significant right – providing Safeguard the exclusive right to decide whether to settle or defend a claim, which is then binding on Ward – being contracted to.  Our conclusion that the phrase "after consultation with the principal" is a condition precedent under Georgia law is supported by the Georgia Supreme Court's decision in *Page*, 642 S.E.2d at 15-16.  Although *Page* involved the interpretation of a

12

phrase in a divorce settlement agreement, its reasoning and holding is instructive here. In *Page*, the Georgia Supreme Court held that the phrase "[i]n the event that a major expenditure is to be incurred, husband will be consulted prior to services rendered, except in an emergency situation" created a condition precedent. *See id.* at 16. Like the provision in *Page*, the GAI in this case required one party to be consulted before its obligation to pay became obligatory.

Safeguard alternatively argues that if it should have consulted with Ward, he waived the consultation by his admission that he did not have the personal assets to indemnify Safeguard. This may be a plausible argument but it, along with the remaining issues presented in this case, is for the factfinder to determine in the first instance.

## IV.

For the foregoing reasons, we conclude that the district court's grant of Safeguard's motion for partial summary judgment is hereby reversed and the case is remanded for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

14