**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RICKMAN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 7, 2019**

# In the Court of Appeals of Georgia

A18A1947. SCHAFFELD v. SCHAFFELD.

MCFADDEN, Presiding Judge.

Carol Schaffeld appeals the order denying her motion to hold her former husband in contempt of their divorce decree for failing to pay alimony. She argues that the trial court erred in holding that her right to alimony had terminated because she was involved in a meretricious relationship. We agree because the evidence is undisputed that Carol Schaffeld had not entered a relationship that involved continuous, open cohabitation. So we reverse and remand the case for further action not inconsistent with this opinion.

1. *Procedural background*.

In 2012, Carol Schaffeld and Walter Britt Schaffeld divorced. The trial court incorporated their settlement agreement into the divorce decree. The agreement

included two provisions requiring Walter Britt Schaffeld to pay alimony. Only one of the provisions is at issue in this appeal. That provision required Walter Britt Schaffeld to pay Carol Schaffeld $2,500 per month and provided in pertinent part that "the payments shall cease if the Plaintiff/Husband or the Defendant/Wife should die, the Defendant/Wife should remarry or enters into a meretricious relationship."

Four years after the divorce, Walter Britt Schaffeld concluded that Carol Schaffeld had entered a meretricious relationship. He stopped paying the $2,500 portion of alimony to Carol Schaffeld directly, although he paid some or all into the court registry. Carol Schaffeld filed a motion seeking to hold Walter Britt Schaffeld in contempt for violating the settlement agreement and divorce decree. The trial court denied the motion as well as Carol Schaffeld's motion for new trial or to set aside the judgment. We granted Carol Schaffeld's application for discretionary review, and this appeal followed.

2. *Standard of review, evidence, trial court's ruling.*

The trial court in a contempt case has wide discretion to determine whether its orders have been violated. . . . If there is any evidence to support a trial court's determination that its order has been willfully violated, this [c]ourt must affirm that determination on appeal. However, where a contempt action turns on the meaning of terms in an

2

incorporated settlement agreement, construction of those terms is a question of law that is subject to de novo review on appeal.

*Sutherlin v. Sutherlin*, 301 Ga. 581, 582 (802 SE2d 204) (2017) (citations and punctuation omitted). Here, the relevant facts are largely undisputed, and the finding of contempt turns on the meaning of the term "meretricious relationship" in the parties' settlement agreement.

The record shows that Carol Schaffeld is in an exclusive relationship with a physician who practices family medicine in Dunlap, Tennessee, 45 or 46 miles away from Carol Schaffeld's residence in Chattanooga, Tennessee. He has an apartment in Dunlap, in the same building as his office.

They have overnight visits and spend as much time together as they can. But there is no "set schedule" and Carol Schaffeld does not "know from weekend to weekend if [she]'ll be able to see him or not." They have taken trips together and have spent holidays together.

He has never lived continuously with Carol Schaffeld. He does not keep clothes or a toothbrush at her house. He does not receive mail at her house or pay her electric bills. He is not registered to vote at her house.

Walter Britt Schaffeld and his fiancee conducted surveillance of Carol Schaffeld's house. On one occasion, her romantic partner was seen walking out of Carol Schaffeld's front door. In one three-month period, they observed one or more of his vehicles parked at Carol Schaffeld's house five Friday nights, five Saturday nights, and five Sunday nights.

The trial court ruled that Walter Britt Schaffeld's alimony obligation "was terminated upon [Carol Schaffeld's] cohabitation." The court found that although Carol Schaffeld and her romantic partner did not spend every night together, they "lived together when [his medical] clinic was closed," Saturday through Monday. The court held that "it would not be logical in our modern mobile society to say that continuously means every night of every day of the week at the same residence."

3. *The trial court erred by finding that Carol Schaffeld was engaged in a meretricious relationship*.

Carol Schaffeld argues that the trial court erred by finding that she was engaged in a meretricious relationship because her cohabitation with her boyfriend was only periodic, not continuous. We agree.

A "meretricious relationship" is "[a] stable, marriage-like relationship in which the parties cohabit knowing that a lawful marriage between them does not exist."

4

Black's Law Dictionary (10th ed. 2014). In the context of domestic relations, Georgia courts have consistently held that a meretricious relationship is a relationship that involves continuous, open cohabitation and in which the parties are either sexually intimate or share living expenses. See, e.g., *Hathcock v. Hathcock*, 249 Ga. 74, 76 (3) (287 SE2d 19) (1982) (use of the word "meretricious" in the statute allowing alimony modification due to former spouse's cohabitation with a third party, now codified at OCGA § 19-6-19 (b), includes "those instances in which persons of the opposite sex dwell together continuously and openly in a relationship similar or akin to marriage (including either sexual intercourse or the sharing of living expenses) albeit they are not husband and wife in contemplation of the law."). See also *Obergefell v. Hodges*, 576 U.S. ___ (135 SCt 2584, 192 LE2d 609) (2015) (regarding same-sex couples).

In *Saxon v. Saxon*, 207 Ga. App. 471 (428 SE2d 376) (1993), a custody case, we held that the trial court clearly erred by finding the mother had engaged in a meretricious relationship when she was dating a man with whom she had a sexual relationship, but there was no evidence that she dwelled openly and continuously with him. See also *Todd v. Casciano*, 256 Ga. App. 631, 637 (1) (569 SE2d 566) (2002) ("In *Saxon*, [supra,] the trial court specifically found that the mother was an unfit parent because she was involved in a 'meretricious' relationship, i.e., dwelling

5

together continuously and openly in an unmarried relationship; but the facts only showed that she was dating a man with whom she had a sexual relationship."). We have found no authority, and Walter Britt Schaffeld cites none, that supports a conclusion that for purposes of modifying alimony, a sexual relationship absent continuous cohabitation can be a meretricious relationship.

Contrary to the trial court's holding, "continuously" means, "in a continuous manner: without interruption." Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/continuously. As the trial court found, Carol Schaffeld and her romantic partner do not live together without interruption; their weekend cohabitation is interrupted when he stays at his apartment in Dunlap, Tennessee the days his clinic is open. The trial court erred by concluding Carol Schaffeld had engaged in a meretricious relationship.

On appeal, Walter Britt Schaffeld argues for the first time that "meretricious relationship" as used by the parties in the settlement agreement means something different from "meretricious relationship" as used in OCGA § 19-6-19, the cohabitation-alimony-modification statute, in that the parties, unlike the statute, did not require open and continuous cohabitation. But see *BTL COM Ltd., Co. v. Vachon*,

6

278 Ga. App. 256, 258 n.2 (628 SE2d 690) (2006) (holding that appellees waived an issue on appeal because they did not raise it in the trial court).

> A settlement agreement incorporated into a divorce decree is construed according to the same rules that govern contractual interpretation in general, with the cardinal rule being to ascertain the intention of the parties. Where any contractual term of a settlement agreement incorporated into a decree is clear, unambiguous, and capable of only one interpretation as written, the provision's plain meaning must be strictly enforced.

*Hall v. Day*, 273 Ga. 838, 839-40 (1) (546 SE2d 469) (2001) (citations omitted). "[I]n arriving at the true interpretation of contracts: . . . [w]ords generally bear their usual and common signification; but technical words, words of art, or words used in a particular trade or business will be construed, generally, to be used in reference to this peculiar meaning. . . ." OCGA § 13-2-2 (2). "As always, the paramount rule in construing a contract is to ascertain the intention of the parties." *Schwartz v. Schwartz*, 275 Ga. 107, 108 (1) (561 SE2d 96) (2002) (construing settlement agreement incorporated into divorce decree).

As detailed above, we have defined "meretricious relationship" outside the context of the cohabitation-alimony-modification statute to mean dwelling together continuously and openly in an unmarried relationship. See *Saxon*, supra. We have

7

found no case in which an alimony obligation is terminated due to a meretricious relationship without continuous, open cohabitation. The parties could have adopted an agreement that defines "meretricious relationship" idiosyncratically, but they did not.

The trial court erred by holding that Carol Schaffeld was engaged in a meretricious relationship. So we reverse the trial court's order and remand this case for further action not inconsistent with this opinion. See *Gunderson v. Sandy*, 295 Ga. 428, 429 (1) (760 SE2d 605) (2014).

*Judgment reversed and case remanded. Rickman and Markle, JJ., concur.*