## S10A1365. MORGAN v. MORGAN.

(704 SE2d 764)

HUNSTEIN, Chief Justice.

Jeff Morgan (Husband), a member of the United States Navy, and his former wife, Tina (Wife), were divorced in February 2007 by a final judgment and decree that incorporated a previously executed settlement agreement between the parties. In pertinent part, the settlement agreement provided that

> upon the retirement of [Husband] from such military service, [Wife] shall be entitled to receive from his retirement benefits only such portion of such benefits as the Navy requires be paid to her. In the event that such payments to [Wife] are required by the Navy, [Husband] agrees to sign any documents required by the Navy to insure that [Wife] receives any such required amount.

After entry of the divorce decree, the parties learned that the Navy did not "require" any division of Husband's benefits and in fact had no legal authority to determine the allocation of retirement pay between ex-spouses. See 10 USC § 1408 (d) (prescribing rules for payment of military retirement benefits to former spouses in such amounts as determined by court of competent jurisdiction). Wife nonetheless sought Husband's agreement to a proposed Agreed Domestic Relations Order (ADRO) under which Wife would receive 50% of the designated "marital portion" of Husband's retirement benefits. Husband refused to sign the ADRO. Thereupon, in July 2008, Wife filed a petition in the trial court seeking to hold Husband

in contempt for refusing to sign the ADRO and seeking "clarification" as to her entitlement to military survivor benefits, which were not specifically addressed in the settlement agreement or otherwise in the divorce decree. In the alternative, Wife requested that the court set aside the divorce decree based on the parties' mutual mistake as to the Navy's authority to allocate Husband's retirement benefits and the failure of the decree to address Wife's entitlement to survivor benefits.

At the hearing on the matter, both parties testified to their understanding that Husband's military retirement benefits were a marital asset. Testimony also established that, although both parties believed that the Navy would apportion such benefits between them, Husband was consistent in insisting that he would agree to do no more than the Navy required. Wife also testified that she had proceeded pro se in the divorce action while Husband had retained counsel; that Husband's counsel had drafted the settlement agreement; and that Wife had refused to sign an earlier version of the settlement agreement because it did not provide for any division of Husband's military retirement pay. Expert testimony established the present value of the retirement benefits to be in excess of one-half million dollars, making it the largest asset in the marital estate.

In its final order, the trial court found that the parties had a mutual misunderstanding that Navy regulations defined a former spouse's share of military retirement pay. Rather than set aside the divorce decree on this basis, the court, declaring the agreement ambiguous on this point, purported to exercise its "inherent powers to interpret" the agreement. Based on the parties' roughly equal distribution of their other marital assets, the court determined that the parties had intended to divide the marital portion of Husband's retirement benefits on an equal basis as well and awarded Wife "fifty percent of [Husband's] retirement that accrued during the time that he was married to [Wife]." Having thus found that the parties clearly intended for Wife to share in Husband's retirement benefits, the court held Husband in contempt for refusing to sign the ADRO. The court further held, based on expert testimony adduced at the hearing, that Wife's share of the military retirement benefits must be construed to include coverage under the Department of Defense Survivor Benefit Plan.[1] We granted Husband's application for discretionary appeal to review the propriety of the trial court's disposition.

---

[1] According to the expert witness, under the retirement benefit plan, Wife's interest in Husband's benefits would terminate altogether if Husband were to predecease her, and the Survivor Benefit Plan was designed to guard against this contingency by guaranteeing an annuity to the survivor in the event the military member is the first to die.

1. A party may not be held in contempt for violation of a court order unless such order " 'inform[s] him in definite terms as to the duties thereby imposed upon him.' " (Citations omitted.) *Farris v. Farris*, 285 Ga. 331, 333 (1) (676 SE2d 212) (2009). See also *Buckley v. Buckley*, 239 Ga. 433 (238 SE2d 238) (1977) (property division in divorce decree not sufficiently specific to be enforced by contempt). Given the trial court's express finding of ambiguity in the provisions regarding allocation of Husband's retirement benefits, it necessarily follows that the court's adjudication of contempt was in error. In addition, insofar as we determine in Division 2, below, that the trial court erroneously modified the terms of the divorce decree, the basis for the trial court's contempt finding is vitiated.

2. It is well settled that "a trial court lacks the authority to modify the terms of a divorce decree in a contempt proceeding. [Cit.]" *Smith v. Smith*, 281 Ga. 204, 206 (2) (636 SE2d 519) (2006). Indeed, " '[i]t is the function of the court to construe the contract as written and not to make a new contract for the parties.' (Punctuation omitted.) [Cit.]" *Roquemore v. Burgess*, 281 Ga. 593, 595 (642 SE2d 41) (2007). In supplying the missing percentage allocation of Husband's military retirement benefits, however, the trial court here did more than construe or clarify imprecise language in the agreement. Compare *Johnston v. Johnston*, 281 Ga. 666 (641 SE2d 538) (2007) (clarifying meaning of "marital home" in divorce decree). Rather, the trial court eschewed the plain language of the agreement allocating to Wife only such amounts as the Navy would "require" and substituted for that provision a 50 percent allocation. See *Darroch v. Willis*, 286 Ga. 566 (3) (690 SE2d 410) (2010) (court improperly modified divorce settlement agreement by requiring sale of marital residence, where agreement required only that Husband remove Wife's name from mortgage); *Roquemore*, supra at 595 (court improperly modified divorce settlement agreement by requiring payment of agreed-upon sum from proceeds of sale of marital residence, where plain language of agreement did not so require).

Though Wife likens this case to *Cason v. Cason*, 281 Ga. 296 (1) (637 SE2d 716) (2006), in which we affirmed a trial court's order requiring payment of stock and cash in lieu of the equivalent equity interest from which such stock and cash had been converted, *Cason* is distinguishable for the simple reason that the trial court there did not itself determine the proportions by which the property would be allocated but rather merely calculated the amount of existing assets that would be equivalent to the asset originally allocated, which, through forces beyond the parties' control, had been converted and was itself no longer available for allocation. See id. at 297-298 (1).

Simply stated, the *Cason* court performed a *calculation* based on an already agreed upon allocation, whereas here, the trial court determined the *allocation* itself. Regardless of the reasonableness of an equal division of the military retirement benefits, the trial court here, by substituting a 50 percent allocation for the parties' ill-advised deference to the Navy, "used the contempt proceeding to substantially alter the final decree [and thus made] an unauthorized modification." Id. at 298 (1).[2]

3. Because reversal necessitates further proceedings upon remand, we address the remaining issue raised on appeal regarding the admission in evidence of the cover letter under which Husband's counsel sent Wife's proposed ADRO to Husband. Though clearly a communication between lawyer and client, this correspondence was not subject to the attorney-client privilege because a copy of the cover letter was sent to Wife contemporaneously with its transmission to Husband. Having been published to Wife, the letter was not confidential and thus is not privileged. See *Bryan v. Barnett*, 205 Ga. 94 (5) (52 SE2d 613) (1949) (where communications between attorney and client made in presence of opposing party, no privilege attaches).

*Judgment reversed and case remanded. All the Justices concur.*

DECIDED JANUARY 10, 2011.

*Wayne D. Keaton*, for appellant.
*Sherri E. Kelley*, for appellee.

---

[2] We note that this outcome does not leave the parties without recourse as to the uncertainty that persists regarding allocation of Husband's military retirement benefits, as the trial court on remand may consider anew Wife's alternative motion to set aside the divorce decree. See *Smith*, supra, 281 Ga. at 207 (2) (divorce decree with erroneous provisions may be challenged via motion to set aside).