In the Supreme Court of Georgia

Decided:   February 22, 2016

S15A1450.  COPPEDGE v. COPPEDGE.

THOMPSON, Chief Justice.

Appellant Bradley Coppedge (husband) appeals from a trial court's order denying his petition for modification of child custody and visitation and holding him in contempt of a final divorce decree.  For the reasons that follow, we affirm in part and reverse in part.

The record demonstrates that husband and appellee Catherine Coppedge (wife) were divorced in December 2006 by a final judgment incorporating the parties' settlement agreement.  At the time the final decree was entered, husband and wife had two minor daughters who attended private school and summer and after-school care at St. Luke School in Columbus, Georgia.  The final decree required husband to pay wife $2,000 in monthly child support and further provided in a provision entitled "Educational Expenses: (1) Expenses Through High School" that:

Included in the direct cash payment to Wife from Husband pursuant to [the $2,000 child support calculation] are what the parties have determined to be Husband's proportional shares of a private school education for each Child at St. Luke. In addition, the parties recognize that also included in Husband's direct cash payment to Wife from Husband pursuant to [the child support calculation] are his proportional shares for any amounts paid in connection with either after school or summer care for either or both of the Children. Should the expenses associated with St. Luke increase or decrease for either or both Children for any reason, including the after school or summer care amounts, the parties shall evenly divide (i.e. 50/50) the amount of any such increase or decrease, and Husband's direct cash amount pursuant to subparagraph ("B") above shall be adjusted accordingly . . . . Wife shall be responsible for making all payments directly to the schools. Notwithstanding Wife's decision making-authority over the Children's educations, if either or both of the Children be removed from St. Luke and placed [in] another private school that is more expensive than St. Luke, Husband's obligation to pay for private school expenses shall be limited to those amounts that he would be charged by St. Luke for given grade level(s) in which the Children are enrolled.

In the spring of 2010, wife decided to remove the children from St. Luke summer care and hired a babysitter to provide summer and after-school child care for the children in her home. In May 2010, husband filed a petition seeking modification of the final decree's child custody and visitation awards. Husband subsequently reduced the amount of his monthly child support payments by the amount of his share of the cost of sending the children to after-school and summer care at St. Luke. Wife answered and counterclaimed for contempt,

2

arguing, among other things, that husband had failed to pay approximately $7,000 in child support, an amount determined by calculating what husband would have been required to pay if the children were still attending after-school and summer care programs at St. Luke.

After a hearing at which both parties presented evidence and argument, the trial court entered a final order denying husband's petition for modification and holding him in contempt for his failure to pay his share of the children's after-school and summer care expenses and for his failure on one occasion to give wife her court-ordered visitation. The trial court concluded as a matter of law that the final divorce decree did not "confine these parties to St. Luke after care or summer camp, and that [husband] was not entitled to reduce child support without a Court order." Husband's motions for new trial and reconsideration were denied.[1] Husband now appeals from the trial court order holding him in contempt of the final divorce decree as well as the denial of his petition for

---

[1] Prior to entry of the trial court's final order, husband filed a pleading styled as a motion for reconsideration. He filed a second motion for reconsideration after the final order was entered.

modification of custody and visitation.[2]

1. Husband contends the trial court erred in holding him in contempt based on his payment of the reduced child support amounts after the children stopped attending St. Luke's summer and after-school care. Specifically, husband argues that he only agreed to pay his proportionate share of after-school and summer care expenses incurred at St. Luke, and therefore, he was not obligated to pay for any of the expenses associated with the in-home babysitter hired by wife. He also contends that the decree permitted him to make an adjustment to his payment for child care without court order. Wife asserts that the cost of the babysitter is an after-school and summer child care expense which husband is obligated to pay a portion of under the terms of the decree.

The threshold issue for determination then is the parties' intent with regard to husband's obligation to pay a proportionate share of the children's after-school and summer care expenses. It is undisputed that

> [a] settlement agreement incorporated into a divorce decree is
> construed according to the same rules that govern contractual

---

[2] Husband filed an application for discretionary appeal in this Court which was granted pursuant to OCGA § 5-6-35 (j) because he was entitled to a direct appeal. See OCGA § 5-6-34 (a) (11).

interpretation in general, with the cardinal rule being to ascertain the intention of the parties. Where any contractual term of a settlement agreement incorporated into a decree is clear, unambiguous, and capable of only one interpretation as written, the provision's plain meaning must be strictly enforced.

(Footnotes omitted.) Hall v. Day, 273 Ga. 838, 839-840 (1) (546 SE2d 469) (2001). The trial court found the language of the parties' agreement, and thus the final decree, did not as a matter of law confine husband's obligation to pay for after-school and summer care to care provided by St. Luke. Therefore, the court concluded, husband was in violation of the divorce decree when, after wife hired a babysitter to provide after-school and summer child care, he reduced the amount of child support by the amount he would have otherwise paid for after-school or summer care at St. Luke.

Applying general rules of contract construction, we cannot agree with the trial court's conclusion that the relevant language of the decree unambiguously imposed upon husband an obligation to pay for a proportionate share of the cost of the babysitter hired by wife. A careful review of the language of the decree proves it is capable of more than one reasonable interpretation. For instance, the decree says that "Husband's direct cash payment" of $2,000 includes "his proportional shares for any amounts paid in connection with either after school

or summer care for either or both of the Children." Read in isolation, this proportional share provision reasonably could be interpreted as imposing upon husband a general and unrestricted obligation to contribute to the cost of after-school and summer care even if it is not provided by St. Luke, thus not permitting him to deduct from his "direct cash payment" his proportional share of child care provided by the babysitter in this case.

The very next sentence of the decree (the "adjustment provision"), however, creates an ambiguity regarding this issue. It provides that the parties shall evenly divide any increase or decrease in "the expenses associated with St. Luke for either or both Children . . . , including the after school or summer care amounts." It also says that "Husband's direct cash amount shall be adjusted" according to the increase or decrease in "expenses associated with St. Luke." "[W]e generally accept that contractual terms carry their ordinary meaning," Archer Western Contractors, Ltd. v. Estate of Mack Pitts, 292 Ga. 219, 224 (735 SE2d 772) (2012), and "[w]ords, like people, are judged by the company they keep," Warren v. State, 294 Ga. 589, 590-591 (755 SE2d 171) (2014); accord Anderson v. Anderson, 274 Ga. 224, 227 (552 SE2d 801) (2001). The word "associated" means "join[ed] or connect[ed] together." See Merriam-Webster

6

Dictionary, http://www.merriam-webster.com/dictionary/associated (Website last accessed February 4, 2016). Giving it its ordinary meaning, the phrase "the expenses associated with St. Luke for either or both Children" could reasonably be interpreted to mean expenses (1) connected with St. Luke (2) that are incurred for the parties' children. The adjustment provision thus would appear to give husband the right to deduct from his "direct cash payment" his proportional share of expenses for child care provided by St. Luke once the children's child care was no longer provided by St. Luke. In such a case, there would be a decrease in the expenses connected with St. Luke for the care of the children.

Alternatively, the adjustment provision could be interpreted as setting a benchmark for the cost of the children's child care at the amount charged by St. Luke, regardless of who was providing the child care, with the parties monitoring St. Luke's increases or decreases in the amount it charged for after-school and summer care and dividing any increases or decreases. But the ordinary meaning of the terms of the adjustment provision makes this reading of the decree uncertain. Those terms describe the expenses as connected with St. Luke for either or both children, so it is not clear that expenses provided by

7

the babysitter would qualify.

Given the ambiguity in the divorce decree regarding husband's obligation to pay for after-school and summer care expenses provided by someone other than St. Luke, we conclude the trial court abused it discretion by holding husband was in contempt of the decree when he reduced the amount of child support payments after wife withdrew the children from St. Luke's after-school program.[3] See Morgan v. Morgan, 288 Ga. 417, 419 (1) (704 SE2d 764) (2011) (party may not be held in contempt for violation of court order unless that order informed him in definite terms of duties imposed upon him); Farris v. Farris,

_____

[3] Our ruling does not mean that husband may not be required to contribute to the cost of the children's after-school and summer care expenses regardless of the provider but simply reflects our conclusion that the language of the divorce decree is insufficiently definite to support a contempt finding based on the proposition that the decree is unambiguous on this point. See Arnold v. Arnold, 236 Ga. 594, 595 (225 SE2d 30) (1976) (failure of the trial court to hold husband in willful contempt for failure to pay child support does not relieve husband of his obligation to make such payments under the original divorce decree). Nor should our ruling be interpreted as expressing an opinion of the evidence admitted at the hearing related to the parties' intent at the time they entered into their settlement agreement. The trial court's ruling pertaining to husband's failure to pay a share of the child care expenses provided by the nanny was based solely on the language of the decree, and therefore, the court made no credibility determinations or factual findings regarding other evidence submitted by the parties. See Roca Properties, LLC v. Dance Hotlanta, Inc., 327 Ga. App. 700, 707-708 (761 SE2d 105) (2014) (explaining that "if the contract contains an ambiguity that cannot be resolved through the rules of construction, the court may look outside the written terms of the contract and consider parol evidence" and that "if the parol evidence is in conflict, 'the question of what the parties intended becomes a factual issue for the jury'") (citations omitted)). We, likewise, express no opinion regarding these matters in this appeal.

285 Ga. 331, 333 (1) (676 SE2d 212) (2009) (before a person may be held in contempt of a court order, the order must inform him in express and definite terms of the duties imposed upon him).

2. It is undisputed that in 2010 husband took the children out of town on wife's birthday, thereby denying wife her court-ordered custodial time on that day. Accordingly, the trial court's decision to hold husband in contempt for the denial of wife's custodial time is supported by the record, and we find no abuse of discretion in this ruling. See Horn v. Shepherd, 292 Ga. 14 (4) (732 SE2d 427) (2012) (trial court's contempt ruling will be affirmed on appeal if there is any evidence to support it).

3. Husband also contends that the trial court erred in denying his request to modify his visitation rights.

> A trial court faced with a petition for modification of child custody is charged with exercising its discretion to determine what is in the children's best interest. A trial court's decision regarding a change in custody/visitation will be upheld on appeal unless it is shown that the court clearly abused its discretion. Where there is any evidence to support the trial court's ruling, a reviewing court cannot say there was an abuse of discretion.

Vines v. Vines, 292 Ga. 550, 552 (2) (739 SE2d 374) (2013) (citations and punctuation omitted).

9

Based on the evidence presented at the hearing and the trial court's consideration of the children's best interest, we cannot say there was a clear abuse of discretion in the trial court's denial of husband's request to modify visitation. It was within the trial court's discretion to credit wife's evidence showing that the children were thriving under the current visitation schedule and to discredit the contrary evidence proffered by husband through witnesses who had not seen the children for a number of years. See Urquhart v. Urquhart, 272 Ga. 548, 549 (1) (533 SE2d 80) (2000) ("'[I]t is the duty of the trial judge to resolve the conflicts in the evidence . . . .' [Cit.]"). Moreover, we find no error in the legal basis of the trial court's visitation ruling. Contrary to husband's assertions, the reference in the final order to husband's failure to show a change of condition formed the basis of the trial court's ruling on husband's request for modification of child custody, not visitation. See OCGA § 19-9-3 (b) (providing that visitation rights may be subject to review and modification without the necessity of any showing of a change in material conditions but trial judge may modify custody "based upon a showing of a change in any material conditions or circumstances of a party or the child").

4. Finally, we find no merit in husband's claim that the eight month delay

10

between trial and entry of the final order denied him his right to procedural due process under the Fourteenth Amendment of the United States Constitution and the Georgia Constitution of 1983, Art. I, Sec. I, Par. I. Keeping in mind that "the requirements of due process are flexible and call for such procedural protections as the particular situation demands," Wilkinson v. Austin, 545 U.S. 209, 224 (IV) (125 SCt 2384, 162 LE2d 174) (2005) (citation and punctuation omitted), we conclude that considering the nature and history of the proceedings in this case, including husband's decision to file a post-trial, pre-judgment motion which required the trial court's time and attention, the delay in the entry of the final decree was not unreasonable and did not result in the deprivation of husband's due process rights. See Cobb County School Dist. v. Barker, 271 Ga. 35, 37 (518 SE2d 126) (1999) ("Neither the federal nor the state constitution's due process right guarantees a particular form or method of procedure, but is satisfied if a party has 'reasonable notice and opportunity to be heard, and to present [its] claim or defense, due regard being had to the nature of the proceedings and the character of the rights which may be affected by it. [Cits.]'"). See generally Duggan v. Duggan-Schlitz, 246 Ga. App. 127, 128 (539 SE2d 840) (2000) (trial court has broad discretion in regulating and

11

controlling the business and conduct of the court). But see OCGA § 19-9-3 (8) (providing that "*[i]f requested by any party* on or before the close of evidence in a contested hearing, the permanent court order awarding child custody shall set forth specific findings of fact as to the basis for the judge's decision . . . . Such order shall be filed within 30 days of the final hearing in the custody case, unless extended by order of the judge with the agreement of the parties.") (emphasis added).

Husband also argues that he was denied due process by the trial court's failure to consider the arguments proffered in his motions for reconsideration. Although husband is correct that a trial court is obligated to "consider all facts and conditions which present themselves up to the time of rendering a judgment" on child custody, see Shore v. Shore, 253 Ga. 183, 184 (318 SE2d 57) (1984), he merely speculates, based on the absence in the final order of a discussion of the information set forth in these motions, that the trial court failed to consider his arguments. Husband's counsel, however, conceded at an October 23, 2012 hearing that the original motion for reconsideration did not include any new information but was filed solely "to get some sort of ruling by the court," and there is nothing in the record to support his assertion that the trial

12

court failed to consider the arguments set out in his second motion for reconsideration. We find no authority, and husband offers none, imposing upon a trial court when ruling on a petition for modification of child custody a due process obligation to include in its ruling a discussion of every argument, regardless of merit, raised by a party. Similarly, we find no abuse of discretion in the trial court's failure to hold a hearing to allow husband to present to the trial court orally the same information provided in his pre-judgment motion for reconsideration.

Judgment affirmed in part and reversed in part. All the Justices concur.

13