301 Ga. 581
FINAL COPY

S17F0613. SUTHERLIN v. SUTHERLIN.

GRANT, Justice.

In this post-divorce contempt action, we granted Appellant's application for discretionary appeal to review the trial court's order finding Appellant in contempt of three separate provisions of the parties' divorce decree.[1] We affirm the trial court's findings as to two of these provisions and reverse as to the third.

Brian and Maria Sutherlin (respectively, "Husband" and "Wife") were divorced by a final judgment and decree entered in November 2012. The divorce decree incorporated a Separation and Property Division Agreement previously executed by both parties. Among other things, the Agreement provided for the division of the marital estate.

---

[1] We note that, because Wife filed her application and notice of appeal prior to the January 1, 2017 effective date of the Appellate Jurisdiction Reform Act, this Court — not the Court of Appeals — has jurisdiction over this case. See Ga. L. 2016, p. 883, §§ 3-1, 6-1 (c) (as of effective date, shifting subject matter jurisdiction over "[a]ll divorce and alimony cases" from this Court to the Court of Appeals).

In November 2015, Wife filed a motion for contempt, contending that Husband had failed to comply with various provisions of the Agreement. Following a hearing, the court issued an order adjudging Husband in willful contempt of the divorce decree. Specifically, the trial court determined that Husband had violated the decree by (1) failing to make timely mortgage payments on the parties' former marital residence; (2) failing to indemnify Wife for liabilities incurred with regard to past-due taxes owed by a family business awarded to Husband in the divorce settlement; and (3) failing to designate Wife as the beneficiary on a life insurance policy as required to secure Husband's buyout obligations under the decree. In granting Husband's application for discretionary review, we asked the parties to address the merits of the first two of these determinations and to address whether Husband was afforded sufficient notice to be held in contempt with regard to the life insurance beneficiary designation.

"The trial court in a contempt case has wide discretion to determine whether [its] orders have been violated." *Kaufmann v. Kaufmann*, 246 Ga. 266, 268 (3) (271 SE2d 175) (1980). The court is not authorized to modify a

previous decree in a contempt order, but it is always empowered to interpret and clarify its own orders. Id. If there is any evidence to support a trial court's determination that its order has been willfully violated, this Court must affirm that determination on appeal. *West v. Barnes*, 254 Ga. 21, 21 (1) (328 SE2d 367) (1985). However, where a contempt action turns on the meaning of terms in an incorporated settlement agreement, construction of those terms is a question of law that is subject to de novo review on appeal. See OCGA § 13-2-1; *Knott v. Knott*, 277 Ga. 380, 381 (2) (589 SE2d 99) (2003).

## I.

As part of the marital property division, the Agreement grants Husband "the sole right to occupy and enjoy" the parties' former marital residence and further provides that

> Husband shall be solely responsible for any and all indebtedness secured by that residence, as well as ad valorem taxes, insurance premiums and utility bills associated with that residence, and shall indemnify and hold Wife harmless as to the same.

The undisputed evidence adduced at the contempt hearing established that the mortgage on this residence was solely in Wife's name. Wife also presented evidence that Husband had been late making the payments on this mortgage on

multiple occasions in 2015 and 2016. Husband did not then, and has not ever, contested this fact. Nonetheless, Husband contends that he should not have been held in contempt because the language of the agreement requires only that he "be solely responsible" for the mortgage payments and that such responsibility does not encompass an obligation to make payments in a timely manner. We disagree. See, e.g., *Floyd v. Floyd*, 291 Ga. 605, 610 (2) (732 SE2d 258) (2012) (enforcing obligation that, though not expressly stated in divorce settlement agreement, was clearly implied from agreement's express terms); see also *Ziyad v. El-Amin*, 293 Ga. 871, 873 (750 SE2d 337) (2013) (same). Husband's responsibility to make mortgage payments clearly encompasses the duty to make those payments on time, an implication that is made even more certain by Husband's obligation to indemnify Wife. Accordingly, inferring a duty to make the mortgage payments in a timely manner did not constitute an improper modification of the Agreement on the part of the trial court. *Floyd*, 291 Ga. at 610.

II.

4

As another facet of the parties' property settlement, the Agreement provides for the ownership and control of three family-owned businesses established during the parties' marriage, requiring Husband to buy out Wife and then retain full ownership of the businesses' assets. Specifically, the Agreement requires Husband within a three-year period to pay Wife 30% of the "net value" of two of the three businesses — Sutherlin's Carpet Care and Pressure Washing, Inc. and Just Plumbing, Inc. — as assessed by a specified accountant at a particular point in time. In exchange, Wife waives all claims to "any funds or assets of each of the corporations on any basis and under any theory." Regarding the third business, Wife similarly "waives any claim to any of its assets and income." And, as will become more relevant in the following section, Husband was required to maintain a $250,000 life insurance policy with Wife as beneficiary until he paid her the sums required to buy out her interests in the businesses. Also included within this section of the Agreement is the following provision:

> Husband shall also indemnify and hold Wife harmless as to any corporate income tax liability for any of the three corporations named above, as Wife has had nearly no access to the financial records of those corporations until very recently, while Husband has

5

had open access to the records and to the corporate accounts and funds.

More than two years after the entry of the divorce decree in November 2012, the Internal Revenue Service ("IRS") attempted to collect unpaid payroll taxes owed by the carpet care business for tax periods in 2013. At the contempt hearing, Wife testified that in April 2015 she received a notice of intent to levy from the IRS, which notified her of a payroll tax debt owed by the business — a subchapter S corporation under the federal tax code, see 26 USC § 1361 et seq. — in the amount of $44,705.38. Corporations electing "S corporation" status under the federal tax code are not taxed on their profits at the corporate level, and instead pass their profits and resulting tax liabilities through to shareholders. See 26 USC §§ 1362, 1366 (a) (1) (A); see also OCGA § 48-7-21 (b) (7) (B). Because Wife remained a shareholder of the carpet care business until Husband completed the buyout requirements, the IRS apparently determined that she was liable for a share of the company's payroll tax debt. As a result, the IRS garnished Wife's 2014 federal income tax refund and Wife ultimately was forced to hire counsel and negotiate a monthly installment payment plan for the balance.

In her contempt motion, Wife claimed that, by failing to satisfy the company's payroll tax obligations such that Wife was then held responsible, Husband had violated that portion of the Agreement that required him to hold Wife harmless as to the "corporate income tax liability" of the family businesses. Husband does not dispute the payroll tax delinquency. Still, Husband contends that the Agreement did not require him to assume sole responsibility for the company's payroll taxes because that debt does not fall within its "corporate income tax liability." The trial court, however, concluded that the payroll taxes in question were encompassed within the company's "corporate income tax liability," and ordered Husband to reimburse Wife for the sums she had already paid on this debt, as well as to assume responsibility for the remaining balance.

## A.

In determining whether this conclusion was proper, we must decide whether the trial court's construction of the term "corporate income tax liability" was a reasonable clarification of the Agreement or instead was so contrary to its apparent intention as to constitute an improper modification. See *Kirkendall v.*

*Decker*, 271 Ga. 189, 191 (516 SE2d 73) (1999) (distinguishing a permissible clarification of a divorce decree from an improper modification). "The cardinal rule of construction is to ascertain the intention of the parties. . . ." OCGA § 13-2-3; *Knott v. Knott*, 277 Ga. 380, 381 (2) (589 SE2d 99) (2003). Where the language in a contract is unambiguous, that task is often a straightforward one. Here we are not so lucky. Contrary to Husband's contention, the phrase "corporate income tax liability" does not on its face so clearly evince the intention of the parties that our inquiry begins and ends with those four words on the page. See OCGA § 13-2-3 (where parties' intent "is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction"). Nor is the term defined in the Agreement.

To be sure, for some corporations, the term "corporate income tax" would have a plain meaning. But here, due to Sutherlin's status as an S corporation, the corporation as an entity has no "corporate income tax liability." See 26 USC § 1366 (a) (1) (A); OCGA § 48-7-21 (b) (7) (B). Husband asserts that the term refers only to the tax owed by each corporation on its own income. However,

8

none of the corporations owes any income taxes; instead, their shareholders do. As the trial court recognized, construing the term to mean what Husband claims it means would render it essentially without meaning, thus violating the maxim that "[t]he courts 'should avoid any construction that renders portions of the contract language meaningless.'" *Horwitz v. Weil*, 275 Ga. 467, 468 (569 SE2d 515) (2002); see also *Floyd*, 291 Ga. at 610, n. 8 ("'[i]t is axiomatic that whenever possible, a contract should not be construed in a manner that renders any portion of it meaningless'"); *Paul v. Paul*, 235 Ga. 382, 384 (219 SE2d 736) (1975) ("'that construction will be favored which gives meaning and effect to all of the terms of the contract over that which nullifies and renders meaningless a part of the language therein contained'").

In the face of this ambiguity, we must look to the entirety of the Agreement to determine the intent of the parties. Indeed, "[i]t is axiomatic that contracts must be construed in their entirety and in a manner that permits all of the terms contained therein to be consistent with one another." *Schwartz v. Schwartz*, 275 Ga. 107, 108 (1) (561 SE2d 96) (2002); accord *Horwitz*, 275 Ga. at 468. Thus, "the entirety of the agreement 'should be looked to in arriving at

the construction of any part.'" *Horwitz*, 275 Ga. at 468 (quoting OCGA § 13-2-2 (4)).  Here, review of the Agreement as a whole clearly reflects the intent of the parties regarding disposition of the family businesses:  Husband would retain ownership of them, and receive the income generated by them, and Wife would relinquish her rights in them except for whatever wages she earned from any employment agreement reached between Husband and Wife.  Between one and four years after entry of the divorce decree, Husband would pay Wife thirty percent of the two businesses' value; at that point, Wife would no longer be a shareholder in either of them.  But until the payment was made, Wife would be shielded from personal responsibility for the businesses' corporate tax liabilities.  Nothing in the Agreement indicates any intent to treat the businesses' payroll tax liabilities any differently than their other tax liabilities, all of which are "corporate" in nature.[2]

---

[2] This interpretation is strengthened by another portion of the Agreement, which states that

> Husband shall indemnify and hold Wife harmless as to any and all liability for personal income taxes for any tax year as to which they have filed jointly, because in each such year, Wife had sufficient funds withheld from her income and paid to the Internal Revenue Service and Georgia Income Tax Division so that she would owe no taxes for any such years.

There is no reason to suspect that this failsafe, which was put in place for the years

Accordingly, rather than construing "corporate income tax liability" as referring to a liability that cannot exist, we construe that term to mean those tax liabilities that flow from the corporation. See *Knott*, 277 Ga. at 381 (declining to adopt construction of divorce agreement that would have rendered certain provisions meaningless); *Horwitz*, 275 Ga. at 468 (rejecting literal construction of agreement that would have rendered certain language meaningless and contravened intent of the parties); *Hayward v. Lawrence*, 252 Ga. 337, 337 (312 SE2d 609) (1984) (construing the word "or" to mean "and," where doing so would effectuate the clear intent of the parties and avoid rendering certain provision meaningless).

To be sure, this Agreement could have been more clearly drafted, and we caution parties to a divorce to ensure that their intentions are plainly expressed. But here, the complete text of the Agreement demonstrates that the parties intended for Husband to assume all tax liabilities of the businesses. We therefore conclude that the trial court's construction of "corporate income tax

---

when the parties were married and filing jointly, would be removed so that Wife would be responsible for corporate taxes after the parties were divorced.

liability" constituted a reasonable clarification of that term rather than an improper modification of the Agreement.

B.

Our agreement with the trial court's construction of the term, however, does not end the analysis regarding the adjudication of contempt on this point. Because our interpretation stems from an explicit finding of ambiguity in the Agreement, we cannot find that the term in question is so clear and definite that Husband's failure to comply with his obligations constitutes a willful violation of the Agreement. See *Coppedge v. Coppedge*, 298 Ga. 494, 498-499 (1) (783 SE2d 94) (2016) (given ambiguity in provision of divorce decree, trial court abused its discretion by holding husband in contempt of that provision); *Morgan v. Morgan*, 288 Ga. 417, 419 (1) (704 SE2d 764) (2011) ("[a] party may not be held in contempt for violation of a court order unless such order inform(s) him in definite terms as to the duties thereby imposed upon him" (punctuation omitted)). Thus, the trial court did err in holding Husband in contempt, and we must reverse its order to the extent it imposes specific requirements for remedying Husband's failure to indemnify Wife and hold her harmless from

12

future payments on the payroll tax liability. Given our affirmance of the trial court's interpretation of this provision of the Agreement, however, Husband is now on notice of his obligations to Wife with respect to the payroll tax liability, the violation of which may subject him to future liability for contempt.

III.

Another of the grounds Wife asserted in her contempt motion related to Husband's failure to conduct the valuation required under the buyout provision. In the course of cross-examining Husband on that subject, Wife's counsel asked Husband about a component of the buyout provision requiring Husband to maintain a $250,000 life insurance policy, with Wife designated as beneficiary, until the amount due to Wife under the buyout was paid. Husband's counsel objected to questioning on this topic, and the trial court overruled the objection. Responding to those questions — and to follow-up questions from the trial judge — Husband testified that he had obtained a $250,000 life insurance policy on which Wife was initially the named beneficiary, but had subsequently changed the beneficiary designation, naming the parties' sons instead of Wife.

13

On redirect examination by his own counsel, Husband stated that he did not object to the trial court considering the issue of the life insurance policy, and that he could reinstate Wife as beneficiary if necessary:

> Q: Okay. So, if necessary, you could put [Wife] back on as beneficiary?
> A: Yes.
> Q: Okay. And you don't have any objection, should the Court find that this life insurance policy plays a role in today's hearing?
> A: No.

In its contempt order, the court found Husband in willful contempt for failing to maintain Wife as the named beneficiary on the life insurance policy pending payment of the amounts owed under the buyout provision. The court ordered Husband to immediately comply with this requirement and to provide Wife with proof of his compliance within 30 days.

In spite of his apparent consent to the court's consideration of his failure to follow the Agreement's directives on designating Wife as a life insurance beneficiary, Husband now asserts that the trial court erred in holding him in contempt on this issue, claiming that he was not afforded sufficient notice of this particular ground for contempt. See *Brown v. King*, 266 Ga. 890, 890 (1) (472 SE2d 65) (1996) (party charged with contempt must be afforded reasonable

notice of the charges he faces in advance of a hearing on the charges); *Barnes v. Tant*, 217 Ga. 67, 72 (4) (121 SE2d 125) (1961) (notice must afford reasonable time for accused to prepare defense to contempt charge).[3] The court stated in its order that its contempt finding was proper because the issue was "directly related to" the allegation of contempt regarding Husband's failure to comply more generally with the terms of the buyout provision.

Under the circumstances presented here, we agree that contempt was available. To begin, the life insurance provision was part of the overall buyout scheme, which was clearly at issue in the contempt proceeding. This is not a case where Husband had no advance notice that contempt was under consideration. Cf. *Barnes*, 217 Ga. at 72 (reversing contempt determination made, without advance notice, during course of trial of habeas action seeking a modification of child custody). Nor is it a case where the contempt finding

---

[3] At least in some circumstances, however, "[a] trial court may sua sponte raise an issue of contempt" without prior notice. *Chatfield v. Adkins-Chatfield*, 282 Ga. 190, 194 (3) (646 SE2d 247) (2007) (affirming trial court's contempt finding regarding husband's violation of pre-trial order, even though finding was rendered based on evidence presented at the parties' divorce trial rather than at a separate contempt hearing). Accord *Tafel v. Lion Antique Cars & Investments, Inc.*, 297 Ga. 334, 340 (5) (773 SE2d 743) (2015) (dictum).

15

arose from a provision entirely separate from those on which the contempt allegations were grounded.

But even pretermitting the question of notice, Husband conceded that he had no objection to reinstating Wife as beneficiary of the insurance policy as required by the terms of the Agreement. Husband effectively invited any error and is estopped from challenging it now. See, e.g., *Hammond v. Hammond*, 290 Ga. 518, 519 (722 SE2d 729) (2012) ("party will not be heard to complain of error induced by [its] own conduct, nor of error expressly invited during the course of trial"). In short, because Husband affirmed on the record that he had no objection to doing what the trial court ultimately ordered, we find no error in the trial court's adjudication of contempt on this issue.

Judgment affirmed in part and reversed in part. All the Justices concur, except Melton, P. J., and Boggs, J., who concur in judgment only as to Division II (B), and Blackwell and Peterson, JJ., who concur in judgment only as to Division II.

Decided June 26, 2017.

16

Domestic relations. Gwinnett Superior Court. Before Judge Tate, pro hac vice.

David A. Powell, for appellant.

Browning & Smith, Austin R. C. Buerlein, Courtney M. Gilkinson, for appellee.