**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 6, 2023**

# In the Court of Appeals of Georgia

A22A1336. CHATEL v. CARROLL.

MARKLE, Judge.

In this discretionary appeal, Peter Chatel challenges the trial court's order finding him in willful contempt of a divorce settlement agreement after he (1) withheld proceeds from his ex-wife's, Leslie P. Carroll, exercise of certain stock options awarded in the divorce; and (2) failed to timely provide documents his ex-wife requested. On appeal, Chatel contends the trial court (1) impermissibly modified the terms of the settlement agreement and erred by holding him in contempt; (2) improperly awarded damages for breach of contract in a contempt action; (3) miscalculated the amount of statutory interest under the applicable statute; and (4) erred by awarding attorney fees and expenses without sufficient evidence. For the reasons that follow, we conclude that the trial court erred by finding Chatel in

contempt with regard to the stock options, and therefore we reverse that contempt finding and the resulting damages and interest. We affirm the attorney fees award and finding of contempt regarding the documents.

> [T]he trial court in a contempt case has wide discretion to determine whether its orders have been violated. The court is not authorized to modify a previous decree in a contempt order, but it is always empowered to interpret and clarify its own orders. If there is any evidence to support a trial court's determination that its order has been willfully violated, this Court must affirm that determination on appeal. However, where a contempt action turns on the meaning of terms in an incorporated settlement agreement, construction of those terms is a question of law that is subject to de novo review on appeal.

(Citations and punctuation omitted.) *Vaughn v. Vaughn*, 365 Ga. App. 195, 198 (1) (877 SE2d 860) (2022); see also *Sutherlin v. Sutherlin*, 301 Ga. 581, 582 (802 SE2d 204) (2017).

So viewed, the record shows that Chatel and Carroll divorced in 2005 after 20 years of marriage. The parties entered into a settlement agreement, which was incorporated into the final divorce decree. As part of the division of property, the settlement agreement[1] provided that Carroll would receive 50 percent of Chatel's

---

[1] Section 5.01 of the settlement agreement provided: "Wife shall own, have, and enjoy as her separate property . . . One half of the vested and unvested stock

2

stock options from his then-employer.[2] Per the agreement, Carroll was "responsible for the taxes and any cost necessary to effectuate her exercise of said stock options." Otherwise, the settlement agreement did not specify how Carroll would exercise the stock options, nor how the taxes would be calculated if she did so. The parties developed their own ad hoc method of effectuating the transfers. When she wished to exercise an option, Carroll would e-mail Chatel, who would exercise the stock options in his name, and then liquidate them before giving the proceeds to Carroll. The employer would withhold from the proceeds 25 percent of the stock value in taxes. Because Chatel believed that the stock proceeds placed him in a higher tax bracket and increased his income tax liability beyond the amount withheld, he unilaterally kept an additional 14.6 percent of Carroll's proceeds from each sale of stock. The agreement further specified that each party must deliver to the other any documents necessary to effectuate the provisions of the settlement agreement, and

options related to stock in the [employer] as of December 31, 2004[.]" Section 5.02 provided the same for Chatel.

[2] Because the stock options are non-transferrable, they remained in Chatel's name and control.

must pay to the other any attorney fees and expenses incurred as a result of the failure to do so.[3]

Between 2010 and 2017, Carroll exercised the stock options eight times. In 2018, Carroll obtained Chatel's tax returns.[4] Based on those tax returns, Carroll moved for contempt, alleging that Chatel violated the settlement agreement by improperly withholding additional taxes from her stock option proceeds. In addition to the money Chatel withheld, Carroll also sought statutory interest, attorney fees and expenses, and compensatory damages for breach of the parties' agreement.

At a bench trial, Carroll testified that she understood there could be additional tax liability for exercising her stock options; but, that Chatel's withholdings were excessive; and she had requested Chatel provide her documentation regarding how he determined the amount he withheld. Chatel testified he had consulted multiple

---

[3] Section 13.04 of the agreement provided: "Each of the parties shall on demand execute and deliver to the other any . . . tax returns and other documents and do or cause to be done any other acts or such things which may be necessary or desirable to effectuate the provisions and purposes of this Settlement Agreement. If either party willfully fails on demand to comply with this provision, that party shall pay to the other all attorney's fees, costs, and other expenses reasonably incurred as a result of such failure."

[4] Chatel filed a petition to modify his alimony obligation in 2018 due to a decrease in income. The trial court dismissed Chatel's petition, and this Court denied his application for discretionary review.

accountants to determine the appropriate tax amount, but he admitted he did not provide Carroll documentation of the withholdings.

Both Chatel and Carroll provided expert testimony from their accountants. Carroll's expert testified that divorce settlements usually direct how to calculate any resulting tax liability, unlike the one at issue here. Carroll's expert further estimated that Chatel withheld an excess amount of $105,302. She further estimated that, had Carroll been able to reinvest these proceeds into the stock market, she would have earned an additional $350,207. She also calculated that Chatel owed Carroll $70,971 in statutory interest under OCGA § 7-4-12. On the other hand, Chatel's expert testified that Chatel assumed the proceeds from the sale would push him into a different tax bracket, and he therefore withheld the difference between the percentage his employer withheld and his new tax bracket. However, Chatel's expert also stated that this method could result in over-withholding because there was no guarantee Chatel's tax bracket would increase. Chatel's expert opined that the over-withholding totaled $33,095.

The trial court found Chatel in willful contempt for breach of the settlement agreement due to the over-withholding and the failure to provide requested documents. Accepting the testimony of Carroll's expert, the court found Chatel owed

5

Carroll $105,302 from funds improperly withheld, plus $70,971 in statutory interest. Further, the court assumed that Carroll would have invested the proceeds into the stock market, and awarded $244,905 for unrealized investment profits. The trial court also awarded Carroll $109,120 in attorney fees under OCGA § 19-6-2, as expressly permitted by the settlement agreement, for Chatel's willful refusal to provide Carroll with the documents she requested. We subsequently granted Chatel's application for discretionary review, and this appeal followed.

1. On appeal, Chatel first argues that the trial court impermissibly modified the terms of the settlement agreement, and thus it erred by holding him in contempt. We agree.

In interpreting a settlement agreement to determine if a party acted in willful contempt, "a trial court has broad discretion to enforce the letter and spirit of the decree, but the court must do so without modifying the original judgment that is being enforced." *Darroch v. Willis*, 286 Ga. 566, 570 (3) (690 SE2d 410) (2010). "The test for distinguishing whether a trial court's ruling clarifies, rather than impermissibly modifies, a divorce decree, is whether the clarification is reasonable or whether it is so contrary to the apparent intention of the original order as to amount to a modification." (Citation and punctuation omitted.) *Mims v. Mims*, 297 Ga. 70, 73

6

(772 SE2d 674) (2015); see also *Cason v. Cason*, 281 Ga. 296, 297 (1) (637 SE2d 716) (2006).

Here, the trial court found the language of the settlement agreement to be clear and unambiguous. This finding, however, is erroneous. The settlement agreement contained no method by which to determine how the taxes would be calculated for the stock options. The provisions of the settlement agreement obligating Carroll to be "responsible for the taxes and any cost necessary to effectuate her exercise" and "responsible for any income tax liability caused by the said transfers" is susceptible to two reasonable interpretations: either Carroll was responsible only for the taxes withheld by the employer, or she would be responsible for the total taxes incurred by her exercise of the stock options, including any tax increase to Chatel. Both experts established that, without an agreed method to determine the tax obligations, there was no definitive meaning to the terms. As such, other evidence outside the agreement itself must be considered in determining the intent of the parties to the agreement. *Christian v. Christian*, 300 Ga. 263, 266-267 (2) (794 SE2d 51) (2016) (where there are two reasonable interpretations of a settlement agreement, the trial court must evaluate parole evidence in determining the meaning); see also OCGA § 13-2-4 ("[T]he meaning placed on the contract by one party and known to be thus understood

7

by the other party at the time *shall* be held as the true meaning.") (emphasis supplied);

*Sutherlin*, 301 Ga. at 584 (II) (A) ("The cardinal rule of construction is to ascertain the intention of the parties.") (citation and punctuation omitted); see also *Eickhoff v. Eickhoff*, 263 Ga. 498, 505 (6) (435 SE2d 914) (1993) ("Appellee having construed the settlement agreement . . . and appellant having understood that to be the proper construction of the settlement agreement, it *must* be held to be the true meaning.") (emphasis supplied), overruled on other grounds by *Lee v. Green Land Co.*, 272 Ga. 107, 108 (527 SE2d 204) (2000); *McKinley v. Coliseum Health Group*, 308 Ga. App. 768, 771 (1) (708 SE2d 682) (2011) ("The construction placed upon a contract by the parties thereto, as shown by their acts and conduct, is entitled to much weight and may be conclusive upon them.") (citations omitted).

Here, by finding that the taxes withheld by the employer were the only taxes necessary to effectuate the stock options, the trial court failed to consider the parties' understanding of the settlement provisions, which is controlling in interpreting the settlement agreement. The testimony and evidence presented at the bench trial shows that the parties mutually understood that Carroll was obligated to pay any increase in Chatel's taxes. As such, the parties' shared interpretation of the agreement was that Carroll would be responsible for all income tax liability generated from her exercise

8

of the stock options. And, their "interpretation is entitled to great, if not controlling, influence, . . . particularly when [their] interpretation is made before any controversy, or when the construction of one party is against his interest," as here. (Citation omitted.) *Eickhoff*, 263 Ga. at 505 (6). Thus, the trial court's conclusion that the employer's withholding of taxes satisfied Carroll's obligation to pay taxes and costs associated with the transfers, and that Chattel impermissibly over-withheld sums, was an improper modification of the settlement agreement. The trial court therefore abused its discretion. *Darroch*, 286 Ga. at 570 (3); see also *Mims*, 297 Ga. at 73; *Cason*, 281 Ga. at 297 (1).

Additionally, because the settlement agreement contained no method for the calculation of taxes, the trial court abused its discretion by holding Chatel in willful contempt of this provision, and this finding must be reversed.[5] See *Sutherlin*, 301 Ga. at 586-587 (II) (B) (where the terms of the divorce agreement are ambiguous, we cannot find that husband's failure to comply with his obligations constitutes a willful

---

[5] Carroll alleges that, regardless of the interpretation of the settlement agreement, Chatel nonetheless withheld more than he should have based on what would be permitted for his tax bracket, and, therefore he was still in contempt. Nevertheless, as the settlement agreement failed to provide *any* guidance on how the taxes were to be calculated, contempt cannot be established due to the ambiguity of the settlement agreement. *Sutherlin*, 301 Ga. at 586-587 (II) (B).

9

violation of the agreement); see also *Coppedge v. Coppedge*, 298 Ga. 494, 498-499 (1) (783 SE2d 94) (2016) (finding a party cannot be held in contempt for indefinite duties in settlement agreement); *Morgan v. Morgan*, 288 Ga. 417, 419 (1) (704 SE2d) (2011) (determining that an order must be definite to permit a finding of contempt); *Farris v. Farris*, 285 Ga. 331, 333 (1) (676 SE2d 212) (2009).

2. Chatel next argues that the trial court improperly awarded damages for breach of contract in this contempt action. Given our conclusion in Division 1 that the trial court erred in finding Chatel in willful contempt for withholding taxes, we further conclude that the trial court's award of damages for breach of contract and statutory interest resulting from the contempt finding must be vacated.

3. Chatel next argues that the trial court erred by awarding attorney fees without sufficient evidence. Specifically, Chatel argues that the trial court decided that it would award attorney fees prior to hearing any evidence, and that the award was in excess of the actual expenses incurred to address the alleged breach under Section 13.04 of the agreement.[6]

---

[6] Seemingly recognizing that the award was justified under the plain language of OCGA § 19-6-2, Chatel now contends that the trial court erroneously prejudged the issue of fees based on certain comments the trial court made during the proceedings, and that the evidence did not support a conclusion that he withheld documents. The trial court's comments, however, were in response to Chatel's

10

Importantly, the trial court also found Chatel in willful contempt for his refusal to comply with discovery requests to deliver documents, namely the tax returns, necessary to effectuate the provisions of the settlement agreement. Chatel does not argue that the trial court erred by finding him in contempt on this ground and thus has waived any challenge to this ruling. See *Gresham v. Harris*, 349 Ga. App. 134, 138 (1), n. 10 (825 SE2d 516) (2019) (appellant waived any claim that the trial court erred in making a certain finding "by failing to enumerate it as an error and provide any supporting argument" on appeal).

Under the agreement, Chatel was required to pay all costs and attorney fees reasonably incurred as a result of his refusal to comply with the document request. . The trial court awarded attorney fees under OCGA § 19-6-2 and the applicable provision of the settlement agreement. OCGA § 19-6-2 permits the trial court to award attorney fees in a contempt action arising from a divorce dispute "depend[ing] on the financial circumstances of the parties, not their wrongdoing[.]" *Cason*, 281 Ga. at 299-300 (3); see also *Reid v. Reid*, 348 Ga. App. 550, 553 (1) (823 SE2d 860)

---

defense of accord and satisfaction, and did not amount to a prejudgment on this issue. Moreover, Chatel was able to present evidence before the trial court made its final determination. As such, Chatel's argument is unavailing.

11

(2019) ("[a]n award under [the] statute is not predicated upon a finding of misconduct of a party.") (citation and punctuation omitted); *Moon v. Moon*, 277 Ga. 375, 379 (6), n. 4, (589 SE2d 76) (2003). Also, the trial court is not required to demonstrate that the fees are reasonable or to make any finding to that effect. *Reid*, 348 Ga. App. at 553 (1) ("OCGA § 19-6-2 does not require a trial court to make *any finding as to the reasonableness of fees*.") (emphasis added); see also *Roth v. Crafton*, 363 Ga. App. 254, 258 (3) (b) (870 SE2d 804) (2022) (explaining that if financial circumstances are considered, no reasonableness finding is required).

Here, the trial court considered the parties' financial circumstances and determined that Chatel owed attorney fees for his contempt of the settlement agreement's discovery provision. Because Chatel has not challenged this basis for contempt and the agreement authorized an award of fees, the trial court properly ordered Chatel to pay $109,120 in attorney fees.

For the above reasons, the trial court properly awarded attorney fees related to Chatel's willful contempt for withholding the documents and we affirm this ruling.

12

We reverse the trial court's finding of contempt regarding withholding the taxes, as well as its award of damages and interest.

*Judgment affirmed in part and reversed in part. Dillard, P. J., and Mercier, J., concur*.