**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 15, 2025**

# In the Court of Appeals of Georgia

A24A1752. AFTUCK v. AFTUCK.

HODGES, Judge.

Appellant Rodney Aftuck ("Husband") and appellee Lisa Aftuck ("Wife") entered into a Consent Final Judgment and Decree of Divorce providing, inter alia, that various financial transactions take place by dates certain. The parties later filed cross-motions for contempt, each alleging that the other had not timely complied with the terms of the Decree[1] and, in Wife's case, also alleging that she had not received the proportion or type of assets required by the Decree. The trial court declined to hold either party in wilful contempt, but ordered Husband to make additional asset transfers to Wife. We granted Husband's application for discretionary appeal, in

---

[1] Husband alleged that wife had not timely vacated the marital residence per the terms of the Decree.

which he does not challenge the trial court's refusal to hold Wife in contempt, but rather contends that the trial court erred by impermissibly modifying the Decree when it ordered him to transfer additional assets to Wife. For the reasons that follow, we affirm in part and reverse in part.

> In matters such as this, while the trial court has broad discretion to determine whether a divorce decree has been violated and has authority to interpret and clarify the decree, *it does not have the power in a contempt proceeding to modify the terms of the decree. A trial court has broad discretion to enforce the letter and the spirit of the decree, but the court must do so without modifying the original judgment that is being enforced.* It is the function of the court to construe the contract as written and not to make a new contract for the parties. The test to determine whether an order is clarified or modified is whether the clarification is reasonable or whether it is so contrary to the apparent intention of the original order as to amount to a modification.

(Citations and punctuation omitted; emphasis supplied.) *Greenwood v. Greenwood*, 289 Ga. 163, 164 (709 SE2d 803) (2011). "[W]here a contempt action turns on the meaning of terms in an incorporated settlement agreement, construction of those terms is a question of law that is subject to de novo review on appeal." *Sutherlin v. Sutherlin*, 301 Ga. 581, 582 (802 SE2d 204) (2017); see OCGA § 13-2-1. We construe settlement agreements in divorce cases "in the same manner and under the same rules

2

as all other contractual agreements." *Kreimer v. Kreimer*, 274 Ga. 359, 361 (1) (552 SE2d 826) (2001).

Pertinent to this appeal, the Decree required Husband to complete transfers within two asset categories to Wife by particular dates: The first involved a transfer of stocks/noncash assets in an IRA and the second involved cash transfers. We will discuss each type of transfer in turn, noting at the outset that the parties' own actions caused these transfers to become intermingled.

(a) *The IRA transfer*. The Decree provides as follows:

Retirement and Investment Accounts:[] Husband shall transfer three hundred seventy-five thousand dollars ($375,000.00), from [a specifically identified] Merrill Edge IRA [] to Wife within thirty (30) days of the Final Judgment and Decree of Divorce. The funds to be transferred to Wife shall consist of a pro-rata share of stocks, bonds, and other non-cash assets within the account, and a tax neutral basis. Upon completion of transfer, the remaining balance shall be Husband's sole and exclusive property.

The parties signed the Decree on January 24, 2023; thus, under the terms of the Decree, Husband should have transferred the above-described assets to Wife within

30 days — at the latest, by February 23, 2023. Husband and Wife, however, did not sign the transfer form until June 11, 2023.

The record shows that on March 14, 2023, Wife's attorney e-mailed Husband's attorney, asking about the transfers. Husband's attorney responded, acknowledging that because of a "mix up on our end[,]" meaning the law firm, Husband was unaware of the payment deadlines. The e-mail asked for "grace" because the delay was "not [Husband's] fault."

Husband testified that he did not have account information from Wife at the time her attorney sent the e-mail, and Wife testified that she first set up an account into which Husband could transfer the assets on March 29, 2023 and later set up "multiple accounts" because, for reasons that are not entirely clear from the record, there were problems with all of the accounts' ability to receive transfers. Husband made several unsuccessful attempts to transfer the assets to these accounts, first learning that there was a problem with the attempted transfers in April or May 2023. Wife set up the account into which Husband ultimately was able to transfer the assets in early June 2023.[2]

---

[2] We note that although the transcript references specific exhibit numbers identifying the financial documents to which the parties' testimony refers, not all of

Husband testified and presented financial statements showing that between the time Merrill Lynch executed the $375,000 transfer and the time his account was debited, the equities had gone up in value and his account was actually debited for $381,116.25. Wife testified that the value she received when the assets were available to her on June 28, 2023, however, was only $372,000; documentary evidence she presented showed the shares were valued at $372,731.25.

(b) *The cash transfer*. The Decree also provides:

Lump Sum Payment: As part of the equitable division of property, Husband shall pay Wife one hundred fifty thousand dollars ($150,000.00) in cash in two installments as follows:

1) Twenty-five thousand dollars ($25,000.00) no later than February 10, 2023;

2) One hundred twenty-five thousand dollars ($125,000.00) no later than July 1, 2023.

There appears to be no dispute in this appeal related to the payment of the first $25,000 cash transfer as stated in the Decree. On June 30, 2023, Husband wrote a

the exhibits in the record are numbered, and the parties' appellate briefs do not provide record citations to these documents, so it was not always possible for the Court to identify the documents the parties discussed in their testimony.

check for the second cash transfer. The check, however, was written not for the remaining $125,0000, but for $143,600. A note in the memo line says: "[$]150,000 - [$]6400 (overp[ay]m[en]t) = [$]143,600[.]"

At the hearing, Wife testified that this higher amount was a "mistake" and Husband testified that he "forgot" he had already made the first $25,000 payment and thought he owed Wife the full $150,000. He deducted $6,400 from the $150,000 to compensate for what he viewed as the overpayment to Wife from the aforementioned Merrill Lynch IRA transfer where his account had been debited for $381,116.25 (rather than the $375,000 in the Decree) because the stock had appreciated after he initiated the transfer.[3]

In view of the overpayment caused by his $143,600 check, Husband asked Wife to write him a check for $25,000. She agreed and sent Husband a check for $25,000. Because of these various transactions, Wife testified that she received, as to the

---

[3] The mathematical discrepancy in Husband's $6,400 deduction will be discussed more fully in Division 2.

second cash payment, only $118,600 ($125,000 - $6,400 = $118,600) rather than the $125,000 she should have received.[4]

The parties filed cross motions for contempt, as noted above, and following a hearing, the trial court issued the order that is the subject of this appeal.

(c) *The trial court's order*. The trial court's order found that Wife received "$375,000" from Husband, but because the stock market rose between February 23, 2023, the last date by which the Husband was to make the transfer pursuant to the Decree, and June 28, 2023, when Wife actually received the assets, "Husband benefitted from the delay and transferred to Wife less shares of stock than he would have had he timely transferred the shares." The trial court ordered Husband to transfer to Wife an additional 289 shares of Apple stock.

The trial court also determined that although the Decree required Husband to pay Wife $125,000 in cash by July 1, 2023, he "shorted the Wife on this payment by $6,400[,]" and it ordered Husband to pay Wife $6,400 in cash.

Husband filed the instant appeal.

---

[4] As Husband's counsel notes in his appellate brief, "Did they overthink it? Yes. There is no dispute that the parties' convoluted ways of payment and reimbursement made things more complex . . . ."

1. *The IRA transfer.* As noted above, the trial court awarded additional Apple shares to Wife, finding that Husband transferred to Wife fewer shares than he would have had the transfer been timely. Husband argues on appeal that the trial court impermissibly modified the Decree by awarding Wife 289 additional shares of Apple stock in excess of the $375,000 worth of shares as listed in the Decree.[5] We agree.

First, Wife points to no evidence, nor do we find any, showing that Husband benefitted from any transfer delay. Indeed, the record shows his account was ultimately debited for more than $381,000 rather than the $375,000 in the Decree. Second, Wife argues that, because the asset holdings within the account had changed by the time she received the transfer, she did not receive the same "pro rata" allocation of shares she would have received had Husband timely paid her in accordance with the Decree. In other words, Wife believes she received shares that were less valuable. She specifically avers that in December 2022, the month prior to

[5] As Husband notes in his appellate brief, the trial court stated at the hearing that it was awarding 289 additional shares of Apple stock, valued at approximately $42,000, to cover what it calculated was the amount by which the Husband benefitted from the late transfer, and to account for how the share allocations held in Husband's account changed between when he should have made the "pro-rata" transfer per the Decree (February 23, 2023 at the latest) and when Wife actually received the assets (June 28, 2023). The trial court's written order, however, does not contain this rationale.

when the parties signed the Decree, Husband's account held shares in different companies, in different proportions, than what was in the account at the time of the actual transfer.

Although Wife argues that she should have received more shares of Apple stock based upon what was in the account a month *prior to* the signing of the Decree, the parties point to nothing in the record showing when the asset allocations in the account changed, and this Court takes no position on the issue. Pertinently, nothing in the Decree restricted Husband in any way from buying or selling assets within the account at any time prior to when he initiated the required transfer to Wife. The relevant portion of the Decree provides only that assets "to be transferred to Wife shall consist of a pro-rata share of stocks, bonds, or other non-cash assets within the account[.]"

We note that although the trial court's order found that Husband "benefitted" because he did not timely transfer the shares by the February 2023 deadline, it is undisputed that Wife did not set up any account to receive the shares until March 2023 and did not set up an account that actually *could receive* the shares until June

2023. Wife cites to no evidence in the record showing that Husband could have transferred the shares to her at any earlier time.

Pretermitting whether the trial court intended to penalize Husband for not timely transferring the shares, despite its decision not to hold him in wilful contempt, nothing in the Decree prohibited Husband from buying, selling, or changing share allocations within the account prior to the date of transfer. Further, the evidence shows that Husband initiated a transfer for shares at that time valued at $375,000, as provided for in the Decree, although because of share price fluctuations which are endemic to the stock market and which the Decree does not address, Husband's account ultimately was debited for more than $381,000 and Wife ultimately received approximately $372,000. The trial court's order effectively modified the Decree to add a prohibition on stock trading that is nowhere present in the plain language of the Decree. See *Morgan v. Morgan*, 288 Ga. 417, 419 (2) (704 SE2d 764) (2011) (finding trial court improperly modified divorce decree and did more than merely clarify or construe imprecise language when it supplied a "missing percentage allocation of Husband's military retirement benefits" in Wife's favor where parties had a mutual misunderstanding of how Husband's Navy retirement account would function);

*Roquemore v. Burgess*, 281 Ga. 593, 595 (642 SE2d 41) (2007) (concluding trial court improperly modified divorce settlement agreement by requiring payment of agreed-upon sum from proceeds of sale of marital residence, where plain language of agreement did not so require); *Berry v. Berry*, 351 Ga. App. 731, 733-734 (1) (832 SE2d 881) (2019) (finding trial court improperly modified settlement agreement by requiring parties to split mortgage debt evenly where "nothing in the agreement stated that [the Wife] also shared the risk that the sale [of the parties' home] would not result in sufficient proceeds to cover the mortgage that the Husband took out in his own name").

Wife cites to *Mermann v. Tillitski*, 297 Ga. 881, 883 (778 SE2d 191) (2015), which found that even where the wife failed to follow the divorce decree's mandate that she prepare a qualified domestic relations order ("QRDO") within 30 days of the signing of a settlement agreement, nothing in the agreement suggested this meant she would forfeit earnings in the husband's IRA accruing after the 30-day period to provide the QRDO had run. Here, however, the pertinent issue is whether the Decree prohibited Husband from changing share allocations prior to any transfer to Wife. It contains no such prohibition, nor does Wife point us to anything indicating the

parties' mutual intent was that it include such an (unwritten) prohibition. "It is the function of the court to construe the contract as written and not to make a new contract for the parties." (Citation and punctuation omitted.) *Greenwood*, 289 Ga. at 164. "A trial court cannot modify a divorce decree in a contempt action, whether or not the trial court holds a spouse in contempt." *Brown v. Brown*, 300 Ga. 559, 561 (796 SE2d 269) (2017). Because the trial court improperly modified the Decree by requiring Husband to provide Wife with an additional 289 shares of Apple stock, we reverse this portion of its order.

2. *The cash transfer*. Husband also asserts that the trial court impermissibly modified the Decree by ordering him to pay Wife $6,400 in cash.

The convoluted cash and asset transfers undergirding this appeal have already been outlined above. We note that this $6,400 — which Husband contends on appeal is an impermissible modification because it is "more than he owes" — is the amount that *Husband chose to deduct from his cash payment to Wife* in an attempt to reimburse himself when market fluctuations caused his IRA to be debited for more than $381,000 after he initiated the Decree's required $375,000 noncash asset transfer to Wife. The total amount of the debit — $381,116.25 minus $375,000 — equals

$6,116.25, not $6,400. Husband argues on appeal that he should only have to pay Wife $283.75 ($6,400 minus $6,116.25).

The mathematical errors leading to Husband's complaints on appeal, however, are of his own making. See *Sutherlin*, 301 Ga. at 588 (III) (noting that a "party will not be heard to complain of error induced by [his] own conduct") (citation and punctuation omitted). Further, he has presented no real argument and cites to no legal authority whatsoever in support of this enumeration. See Court of Appeals Rule 25 (a) ("At a minimum, the appellant's brief must include . . . argument, which *must cite the authorities relied on . . . .*") (emphasis supplied); *In the Interest of B. P.*, 222 Ga. App. 621, 622 (475 SE2d 673) (1996) (declining to address contention of error where appellant provided no supporting authority for the argument).

In sum, we affirm the trial court's order directing Husband to pay Wife $6,400 in cash, but we reverse the order insofar as it awards 289 additional shares of Apple stock to Wife.

*Judgment affirmed in part and reversed in part. Doyle, P. J., and Watkins, J., concur.*